———————————————— UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:17-CV-12462- WGY

ANNA V. KASHPER, Individually and as
Mother and Next Friend of Three Minors and
as Personal Representative of the Estate of
KONSTANTIN M. KASHPER,

       Plaintiffs,

v.

TOYOTA MOTOR SALES, U.S.A., INC.
TOYOTA MOTOR CORPORATION,
ENTERPRISE FM TRUST

ENTERPRISE FLEET MANAGEMENT,
JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,,

Defendants.

**PLAINTIFFS' OPPOSITION TO ENTERPRISE FLEET MANAGEMENT AND ENTERPRISE FM TRUST'S
MOTION FOR SUMMARY JUDGMENT**


       Enterprise Fleet Management and Enterprise FM Trust are two distinct legal entities.

One is a Missouri entity and the other is a Delaware entity. It may be that legal boundaries and

formalities were  not observed. Defendants have treated the two as a unity, but that is not so;

and it may be that Enterprise FM Trust is entitled to a dismissal, but Enterprise Fleet

Management clearly is not.

       The Enterprise defendants have not answered a single interrogatory or produced a

single piece of paper in response to requests. Borrego the lessee has been served with a

comprehensive subpoena and on the next business day after Borrego agreed to provide

relevant documents, this Summary Judgment motion was served and Borrego is now refusing to produce relevant documents that would include those on leasing or maintenance. Plaintiff objects to either Defendant at any time such as in rebuttal or oral augment making or presenting any factual claim other than those made in this motion or in documents provided prior to September 1 to the Plaintiff.

The affidavit submitted can at best be characterized as misleading. Example one: The affidavit (Enterprise affidavit ex 2) states the following under oath:

6.      " Enterprise FM Trust holds title to the motor vehicle leased by Enterprise Fleet Management.

7.      Enterprise Fleet Management is in the business of leasing vehicles owned by Enterprise FM Trust. A true and accurate copy of the Master Equity Lease Agreement in this regard is attached.

Neither of these statements are true. Enterprise Fleet Management did not lease the Kashper vehicle. Also, a visit to the web site of Enterprise Fleet Management (Exhibit pages 17-19) indicates that its business model is not leasing vehicles owned by Enterprise FM Trust. It is probable that there is leasing, but Enterprise Fleet management has provided no evidence of any actual instance of that, and this particular vehicle involved in this case was not leased by Enterprise Fleet Management (see lease, exhibits page 11 and 14).

The Open End (Equity) Lease Rate Quote states on page 1 of 4(exhibit page 7): "Enterprise FM Trust will be the owner of the vehicle covered by this Quote. Enterprise FM Trust (not Enterprise Fleet Management) will be the Lessor of such vehicle under the Master Open-End

(Equity) Lease Agreement and should have all the rights and obligations of the Lessor under the Master Open-End (Equity) Lease Agreement with respect to such vehicle."

The Master Open-End (Equity) Lease Agreement is by and between Enterprise FM Trust and Borrego(Kashper's employer). (Exhibit pages 11-14).

Enterprise Fleet Management, Inc. appears to be a legally independent entity that provides amongst other things provides maintenance services to businesses and government agencies and organizations. See exhibit pages 17-19. According to the Exhibit (page 18): "In addition, Enterprise Fleet Management operates one of the nation's largest service departments, comprising more than 100 Automotive Service Excellence (ASE -certified technicians. Enterprise Fleet Management also helps improve fuel efficiency, increase productivity and reduce overall fleet size by identifying and minimizing fleet surpluses."

The Maintenance Agreement is between Enterprise Fleet Management, Inc. and Borrego, Exhibit page 17-19). The Maintenance Agreement provides for the payment of a monthly fee (Exhibit page 15)by Borrego to Enterprise Fleet Management Inc. (Actually, the monthly maintenance fee was paid to Enterprise FM Trust as agent for Fleet Management, Inc.,Exhibit page 7,note 3 ).

Example 2: The affidavit states:

"At no time during the time in which the vehicle was leased, up until the time of the accident, did Enterprise FM Trust or Enterprise Fleet Management perform any repair, maintenance or other work on the vehicle at issue' (Enterprise Affidavit)

This is misleading and not relevant. Enterprise Fleet Management was responsible for repairs and maintenance as specified in the Maintenance Agreement and for which Borrego was

obligated to pay a monthly fee. The Maintenance Agreement ( paragraph 7, exhibit page 15)

provides that Enterprise will arrange for maintenance and repair to be done by others

presumably selected by Enterprise Fleet Management It is not relevant that the Enterprise Fleet

Management did not have their own employees or own facilities do the work.


## RESPONSE TO CLAIM OF NO DUTY

Enterprise is relying on a case that is not relevant and involves very different facts. Even

a casual reading indicates that court would have reached the  opposite decision, if confronted

with the same facts here.

The case is **GUS KASSIS, administrator,[1] , v. LEASE AND RENTAL MANAGEMENT**

**CORPORATION & another.[2], 79 Mass. App. Ct. 784 (2011) Exhibit pages 1-4.**

Of particular relevance is this discussion in the Kassis opinion at 789 (Exhibit page 2):

> "Upon delivery of the bailed property, the bailor relinquishes possession and control to the
> bailee, together with responsibility for the property's continuing safety. Absent
> contract, statute, or an agency relationship, a bailor of property is not liable to third
> persons injured as a result of a bailee's negligent use or operation of the bailed
> property. See  *Strogoff* v. *Motor Sales Co.,* 302  Mass. 345, 347 (1939); *Rich* v.
> *Finley,* 325 Mass. 99, 107 (1949). A bailor has no common-law duty to inspect or
> repair bailed property, nor is a bailor liable for injuries resulting from a defect arising
> after the property's delivery to the bailee. See *Corlett* v. *Hi Lo Corp.,* 350 Mass. 769,
> 769 (1966). See also *Standard Oil Co.* v. *Foster,* 280 F.2d  912, 914-915 (5th Cir.
> 1960); *Rigby* v. *Suburban Rendco, Inc.,* 548 F. Supp. 202, 206 (D. Del. 1982); 8A
> Am. Jur. 2d  § 180 (2009). However, if a bailor agrees to retain control over the
> bailed property, such as by an agreement to repair, maintain, or inspect, he or she
> may on that basis be held liable for later-arising defects. *Standard Oil Co., supra* at
> 914. *Rigby, supra* at 206. See 8A Am. Jur. 2d Bailments § 180."

Here in Kashper there is an agreement to repair and to maintain and a separate monthly fee. Enterprise Management controls the maintenance and repair, selects the third party who does the work. In other situations Enterprise has to approve. This is not a bailment situation. This Borrego lease lacks the things that the Kassis lease had that made the court treat it  as a bailment.

The no duty argument is grounded in the bailment analogy with no duty to inspect or to repair or to maintain. A fair reading of the Kassis opinion is that where there is such a duty by an agreement there is a basis to be held liable for later-arising defects.  Also, here no argument or anything has been made that the Toyota Tacoma was free upon delivery from defects. Whether the defects were present at time of leasing or afterward, does not matter, either way there is responsibility and liability.

The Enterprise defendants in their papers do not discuss any of the Plaintiff's defects or any of the expert reports, in effect, conceding these reports and whatever are sufficient for summary judgment purposes.

**Other things:**

1. Defendants do not claim the Toyota Tacoma was free from defect when delivered. Defendants do not challenge any of Plaintiffs' defect claims or any claims made by its expert(s). The Enterprise defendants in their papers do not discuss any of the Plaintiff's defects or any of the expert reports, in effect, conceding these reports and whatever are sufficient for summary judgment purposes.

2. The Defendants make no claim as to the relationship or equity ownership of the two defendants. Defendants have lumped together, but the two Enterprise defendants are different and Enterprise Fleet Management is not an Owner and not a Lessor. It appears more likely than not that the ownership or equity interests are not identical. Paragraph 8b of lease (exhibits page 8) in substance states that the Enterprise FM Trust has no responsibility for what Fleet Management does, and that Borrego was not required to use Enterprise Fleet Management for fleet management.

3. Enterprise Fleet Management, Inc. is not and never was the owner of the Toyota Tacoma and never was the Lessor of the Toyota Tacoma.  There are no allegations that Enterprise Fleet Management , Inc. ever did anything to make it arguably a de facto owner or lessor. The actual claim,  a false claim, is that Enterprise FM Trust is the lessor.

**The Graves Amendment  (Exhibit pages 5-6)**

Enterprise Fleet Management, Inc. is neither the Owner nor the Lessor of the Toyota Tacoma that Konstantin Kashper was driving. Enterprise Fleet Management was responsible for repair and maintenance as per the Maintenance agreement with Borrego. Any liability of Enterprise Fleet Management, Inc. is based on its contractual obligations to inspect and repair and maintain, and is not vicarious. Therefore, the Graves Amendment has no application with respect to Enterprise Fleet Management, Inc. and any liability will not be vicarious.

Enterprise FM Trust has presented no evidence that it is engaged in the business of renting or leasing vehicles. It even denies in this motion that it is the lessor and falsely claims some sort of partnership with Enterprise Fleet Management, Inc. The exact relationship between the two defendants is unknown. A flow chart, attached from a prospectus gives some hint, see attached. With respect to Borrego, Enterprise FM Trust is the Lessor of all vehicles covered by the Master Lease, and Enterprise Fleet Management is available apparently at Borrego option to do maintenance and repairs and so forth.

The following excerpt from an article by Leslie J. Pujo and Wesley D. Hurst is a reasonable oveview of relevant parts of the Graves Amendment.

> "Essentially, the federal Graves Amendment provides that a motor vehicle rental or leasing company cannot be held liable under state or local law for damages or injuries that occur during the rental or lease simply because the rental company (or its affiliate) is the owner of the vehicle.
>
> To benefit from the Graves Amendment, the "owner" must be "engaged in the business of renting or leasing motor vehicles." A vehicle "owner" may be the titleholder, lessee, or bailee of the vehicle.
>
> The Graves Amendment, however, does not protect a rental company from its own negligence or criminal wrongdoing. If an injury is

caused by a rental company's negligent or criminal act, the rental company

could still be directly liable for its actions or inactions — even if an accident

occurs while a renter is driving the vehicle.

Direct negligence claims brought against rental companies typically take one of three

forms: negligent entrustment, negligent maintenance, or failure to supervise or train

employees. In addition, a rental company may still be held vicariously liable for

damages or injury to third persons caused by the rental company's employees,

depending upon the state and circumstances.

The Graves Amendment does not affect state minimum financial

responsibility (MFR) laws or laws that impose liability on rental companies

for failure to meet MFRs or other insurance requirements."

The defendants are not entitled to any under the Graves Amendment until this state minimum

financial responsibility is paid.

One open issue is the effect of the Graves Amendment with respect to claims of breach of

implied warranty. The purpose of the Graves Amendment was to shield rental companies from

vicarious liability on the part of its renters or lessees. Here the issue is state laws making lessors

or owners liable for defective products such as motor vehicles. The Defendants in their papers

discuss at length a n on-issue vicarious liability for negligence of Kashper, but never mention

what may be involved and that is liability for leasing a vehicle that the defendants did not

manufacture or design and may have never had actual physical custody.

The Graves Amendment concerns only vicarious liability. Enterprise FM Trust is not exempt for liability for anything it did with respect to repair, inspection or maintenance as an agent of Enterprise Fleet Management. As neither Enterprise nor Borrego has produced any relevant documents either in response to a rule 34 request or a subpoena, it is unknown exactly what Enterprise FM Trust did as an agent other than collect the monthly maintenance agreement fee. In this motion Enterprise is in effect denying either defendant had any obligations or duties with respect to maintenance or repair, this is untrue.

CONCLUJSION:

There is no basis whatsoever to grant summary judgment as to Enterprise Fleet Management, whose involvement is as the provider of maintenance and repair and inspection services for which a monthly fee was charged.

As for Enterprise FM trust, no summary judgment should be awarded on the basis of a flawed and incorrect affidavit in material respects.  Enterprise FM Trust is the lessor, and the claim that Enterprise Fleet Management is the lessor is simply and absolutely false.  The deal with Borrego involved a maintenance agreement, and the claim or attempt to make it appear that the defendants had no responsibility for maintenance is at best trickery and at worse something else.  The monthly maintenance fee was paid by Borrego to Enterprise FM Trust as agent. It may be with the actual facts instead of the fake facts in the affidavit, Enterprise FM Trust could make a credible claim for Summary Judgment, but that is not before the Court now; and summary judgment must be denied for Enterprise FM Trust too.

Plaintiffs by their attorney,

Marc S. Alpert, BBO#016420
Marc S. Alpert, P.C.
15 Court Square , #940
Boston, MA 02108-2524
Phone: 617 227-2380
Fax: 866-393-2857
e-mail: trepla2380@juno.com. marcalpert2015@gmail.com

## CERTIFICATE OF SERVICE

On September 4, 2018, I, Marc S. Alpert Kate A. Messinger, filed electronically and served courtesy copies by e-mail on counsel for all parties. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.