UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:17-CV-12462-WGY

ANNA V. KASHPER, Individually and as
Mother and Next Friend of Three Minors
and Personal Representative of the Estate of
KONSTANTIN M. KASHPER,

    Plaintiffs,

v.

TOYOTA MOTOR SALES, U.S.A., INC.
TOYOTA MOTOR CORPORATION,
ENTERPRISE FM TRUST
ENTERPRISE FLEET MANAGEMENT,
JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,

    Defendants.

**PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' RESPONSE TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**I.**

    Plaintiff moves to strike Defendant's Response. The response is sufficiently deceptive and misleading as to require its being stricken.

    First, Defendant Enterprise Fleet Management is not the Lessor of the subject Toyota Tacoma. The Response makes it appear as if it is. The Graves amendment does not preempt state law for entities who may lease other vehicles for liability with respect to vehicles like the subject Toyota Tacoma that the entity neither owns nor leases.

    The Defendant has produced no documents or anything to indicate Enterprise Fleet Management is even in the business of leasing nor has it produced any leases or evidence of leases, and initially claimed Enterprise Fleet Management was the Lessor of the subject Toyota Tacoma. Of some interest is Enterprise Fleet Management's web site. On the web site Enterprise Fleet Management lists a number of services, here is the list:

**SERVICES**

- Local Account Managers
- Proactive Fleet Management
- Negotiating Pricing
- Buying and Selling
- Fleet Planning Technology and Reporting

- Telematics
- Maintenance Management
- Vehicle Accident Management
- Fuel Management
- Titles, Licensing, Registration
- Transparent Pricing

Leasing of vehicles is not on the list. Actually, the word leasing does not even appear on the web site. Forty-nine pages from the web site have been downloaded or whatever as exhibit 1. Some other EFM documents have also been downloaded without the word leasing, also exhibit 1. EFM and leasing does appear on one web page, a web page of Barnes Dennig. There is nothing on that web page to suggest EFM is an actual Lessor as opposed to an entity that can run the numbers and advise and perhaps help a customer lease. The Barnes Dennig page is exhibit 2.

Google includes the word leasing, but that word is not on EFM's web site, and is either a mistake or perhaps a reference to Enterprise Fleet Management helping a customer lease. Although the defendants have provided no evidence, and claim Enterprise Fleet Management is leasing and not advising. It is most probable Enterprise Fleet Management runs the numbers, so to speak, and advises customers or prospective customers of the benefits of leasing, and may even advise the customer on the leasing process and devise strategy do so, but that does not make EFM a Lessor any more than an accountant who provides similar services is therefore a Lessor. To be a Lessor of fleet vehicles requires access to considerable capital that EFM (unlike Enterprise FM Trust) does not appear to have.

The two defendants are separate legal entities, one is a trust whose Trustee is a bank.

**Most important the Response provides a totally false and fictional rendering of Defendant Fleet Management's duties and responsibilities as Fleet Management with respect to maintenance and repair of the subject Toyota Tacoma and provides an absurd version of a passive bill payer using Fleet Management 's own money.**

Section 8 of the affidavit submitted with the response: reads: "At no time during the time in which the subject vehicle (2016 Toyota Tacoma) was leased did Enterprise have direct oversight or responsibility over the maintenance of the subject vehicle."

This is typical of defendants pleadings and papers. The Enterprise defendant is not identified. That statement might be true for Enterprise FM , but not for Enterprise Fleet Management. The term direct oversight can mean anything. This is trick wording designed to make something that is false appear true. Actually, EFM with respect to any service or repair of more than 50.00 preapproves and dictates what work is to be done and where the work is to be done.

The maintenance agreement provides **in paragraph 7: "Lessee acknowledges that EFM does not perform maintenance or repair services on the covered vehicles but rather EFM arranges for maintenance and/or repair services on the covered services to be performed by third parties."**

The maintenance agreement provides in **paragraph 4:** as follows: **"Whenever it is necessary to have a Covered Vehicle serviced, Lessee agrees to have the necessary work performed by an authorized dealer of such Covered Vehicle or by a service facility acceptable to EFM. In every case, if the cost of such service will exceed $50.00, Lessee must notify EFM and obtain EFM'S authorization *for* such service and EFM's instructions as to where such service shall be made and the extent of service to be obtained. Lessee agrees to furnish an invoice for all service to a Covered Vehicle; accompanied by a copy of the shop or service order (odometer mileage must be shown on each shop or service order)."**

In neither the original Summary Judgment pages nor in the Response is there any document other than some misleading and dubious affidavits to even suggest that the actual arrangement between Borrego and EFM is anything other than what is set forth in the written agreements. The lease agreement specifies that any modifications or changes must be in writing(paragraph 16) as does the maintenance agreement (paragraph 10). The Enterprise defendants have completely refused to respond to all discovery requests, and after receipt of the Plaintiff's opposition still have provided no documents to support the claims made in the motion. Borrego after first agreeing to produce relevant documents has now refused.

Paragraph 7 of the affidavit is as follows: "This monthly maintenance fee is in place to allow for Borrego Solar Systems, Inc. as Lessee to submit invoices or request payment from Enterprise Fleet Management for maintenance that Borrego Solar Systems, Inc. as Lessee provides for the subject vehicle"

This entire paragraph 7 is at best deceptive and misleading, and most likely is simply false. This paragraph 7 and the Response basically claim Enterprise Fleet Management functions as some sort of clerk or bill payer only, and in exchange for a monthly fee uses its own money to pay Borrego's bills to vendors selected by Borrego and at prices agreed to by Borrego for services that Borrego alone approved. There is nothing in the lease or maintenance agreement to indicate or even hint that is the purpose of the monthly maintenance fee. It also falsely implies that Borrego is a free agent and does not even hint that EFM according to the Maintenance Agreement arranges for work to be done by third parties, and Borrego must get prior authorization and must use service facility acceptable to EFM. (As an aside it is extremely unlikely any business would ever under any circumstance agree to an arrangement such as the one the defendants claim EFM did.)

The reader may now be wondering what about the quotes in the Enterprise response.. What about is simple, the response was drafted so as to mislead and to obfuscate and to support fictions. There are two separate agreements one in lease with FM Trust and the other a maintenance agreement with Enterprise This is from the response:

A.   Within the Master Equity Lease Agreement with the Trust it states:

> 8(a)."Lessee agrees, at its expense, to: (1) maintain the Vehicles in good condition, repair, maintenance and running order and in accordance with all manufacturer's instructions and warranty requirements and all legal requirements and furnish all labor, materials, parts and other essentials required for the proper operation and maintenance of the vehicles." See Lease, p. 2 ¶ 8.

This is in the Master Lease and not in the maintenance agreement. **As between Enterprise FM Trust, Borrego is responsible for the repair and maintenance. Borrego then made an agreement with Enterprise Fleet Management a separate and legally independent entity to have Enterprise Fleet Management provide maintenance and repair services.**

As for intertwined the Master Lease provides as follows in section 8:

> (a) ...Lessor will *not* be required to **make** *any* repairs or replacements of any nature or description with respect to any Vehicle, to maintain or repair any Vehicle or to make any expenditure whatsoever in connection with any Vehicle or this Agreement
> (b) Lessor end Lessee acknowledge and agree that if Section 4 of a Schedule includes a charge for maintenance, (i) the Vehicle(s) covered by such Schedule are subject to a separate maintenance agreement between Enterprise Fleet Management. Inc. and Lessee end (li) Lessor shall have no liability or responsibility for any failure of Enterprise Fleet Management. Inc. to perform any of Its obligations thereunder or to pay or reimburse Lessee for its payment *of* any costs and expenses incurred In connection with the maintenance or repair of any such Vehicle(s)."

'There is no intertwining here. The two agreements make it as clear as the English language can make it, that Enterprise FM Trust is the Lessor and is not responsible for maintenance and repairs or anything that Enterprise Fleet Management may be responsible for.

II.

Second, the defendants recitation of its attorneys involvement with Borrego is also deceptive and misleading. Attached hereto is a copy of a complaint in another lawsuit (exhibit 3) that touches upon the conflict of interest and how the same law firm has used its representation of the compensation insurer and Borrego to help in the Enterprise defense of the tort case to the detriment of the compensation insurer and Borrego. The common law firm that appears to be representing a lot of entities with conflicting interests has known since early July of this lawsuit, and has rebuffed any attempt by the Plaintiff (both before and after filing) and to resolve its claims and apparently has refused to inform its clients of these efforts or offers. This is being done continuously and as far as Plaintiff knows until today, and certainly actively until July 2018.

Also, the Enterprise defendants in their response claim their law firm represented the compensation insurer Tri-State Insurance of MN and not Borrego in a claim brought by Anna Kashper's husband. The compensation claim was brought by Anna Kashper, individually and ppa. Actually the insurer (see below) was a party to the compensation claim as the insurer of Borrego and its obligations to pay were as Borrego's insurer. In a very real sense the insurer was not defending anything the insurer may or may not have done. Attached hereto as the lump sum agreement (exhibit 5), as is noted in Count 2 of the other lawsuit and referenced in the correspondence, the lump sum agreement has aspects that are highly detrimental to the interests of both Anna Kashper the plaintiff and the law firms' admitted client Tri-State and the law firm almost certainly did this deliberately, and definitely once Anna Kashper learned of this and wanted it corrected, refused to do so.

Enterprise claims that prior to this litigation its counsel represented the interests of the insurer of Borrego. This is another example of a statement that is technically true, but is deceptive and misleading and designed so that the reader will reach a false conclusion The same law firm is still representing the interests of the insurer as the correspondence shows (exhibit 4). The interest of the insurer and that of Enterprise are directly conflicting, as the insurer has a large lien that will be reduced or satisfied in the event Enterprise pays any moneys to Kashper, and so presumably would want to work with Kashper to see that happens; and Enterprise presumably does not want to pay moneys.

While the interests of the insurer and the insured are often if not usually not completely the same, the overlap here is substantial. In the compensation proceedings and to this date, the same law firm that represents the two Enterprise defendants also has represented both Borrego and its insurer Tristate.. As far as the Plaintiff knows at no time has Borrego been advised to get separate or additional counsel due to a conflict with the insurer TriState.

With respect to the lien Borrego and its insurer both have a direct financial interest in Kashper recovering money in this litigation. It is possible that Borrego also has a conflicting interest due to contractual language that can be dealt with, but the Plaintiff cannot be expected to discuss this with the same law firm that represents two and maybe three conflicting interests.

As recently as this July there was a significant matter in which the interests of Borrego and its insurer were different from that of Enterprise; and the law firm representing Enterprise and also Borrego and Borrego's insurer chose to throw the insurer and Borrego under the bus (so-to-speak).

In early July, Toyota asked the Plaintiff to make a settlement demand. In order for the Plaintiff to do so, the Plaintiff wanted to contact the insurer to discuss making a deal, but did not want and could

not discuss it with the insurer's attorney who is also Enterprise's attorney. Plaintiff asked orally and then in writing that Plaintiff be given a contact person other than someone at the law firm representing Enterprise to discuss. Plaintiff also proposed a deal on how to divide the proceeds of any settlement or award in this case between Kashper and Tristate. The law firm refused to provide a contact person and apparently never even told its client Tristate anything about this possible settlement opportunity or the Plaintiff's offer or proposal on how to share the proceeds of any settlement or award.

As an aside there are many reasons beyond the obvious such as the benefit to the insurer of partnering with Kashper and then settling with Toyota and litigating against Enterprise and the Dealer.

In any event the same law firm is sufficiently involved and has been involved in representing the two Enterprise defendants, the compensation insurer and Borrego (at least to the extent the compensation insurer is acting as Borrego's insurer) as to validate a suspicion when Borrego refuses to produce subpoenaed documents that might refute the claims EMT is making in this motion for summary judgment. Claims that appear to be sufficiently bogus as to support a motion to strike. This law firm has already on at least three occasions harmed the Kashpers and its client TriState to further the interests of Enterprise. It is quite possible that with respect to the Borrego documents that again this was done.

Plaintiffs by their attorney,

Marc S. Alpert, BBO#016424  Marc S. Alpert, P.C.

15 Court Square , #940 Boston, MA 02108-2524 Phone: 617 227-2380 Fax: 866-393-2857 e-mail: trepla2380@juno.com. marcalpert2015@gmail.com

CERTIFICATE OF SERVICE

On September 26, 2018, I, Marc S. Alpert Kate A. Messinger, filed electronically and served courtesy copies by e-mail on counsel for all parties. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.