UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:17-CV-12462- WGY

ANNA V. KASHPER, Individually and as
Mother and Next Friend of Three Minors and
as Personal Representative of the Estate of
KONSTANTIN M. KASHPER,

    Plaintiffs,

v.

TOYOTA MOTOR SALES, U.S.A., INC.
TOYOTA MOTOR CORPORATION,
ENTERPRISE FM TRUST
ENTERPRISE FLEET MANAGEMENT,
JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,

    Defendants.

## EMERGENCY MOTION OF THE DEFENDANTS, ENTERPRISE FM TRUST AND ENTERPRISE FLEET MANAGEMENT'S TO ENFORCE SETTLEMENT AGREEMENT

Defendants, Enterprise FM Trust and Enterprise Fleet Management (collectively "Enterprise"), move for an order compelling the enforcement of the settlement reached between Enterprise and plaintiff, Anna V. Kashper, Individually and as Mother and Next Friend of three Minors and as Personal Representative of the Estate of Konstantin M. Kashper, and to award the costs and attorneys' fees expended in connection with this Motion. As more fully set forth below, the parties agreed to settle the claims against Enterprise in this matter on October 26, 2018 and, to date, plaintiff has refused to execute a Settlement Agreement or notify this Court of the settlement. The reason this Motion is being filed on an Emergency basis is because that this Court has scheduled a hearing on Defendants' Summary Judgment **for this Thursday, November 29, 2018**. As Enterprise has settled the claims against it in this action, such hearing should be moot.

1

**I.     BACKGROUND**

This action arises out of a single-vehicle accident that occurred on January 26, 2017 at approximately 4:30 P.M. on Interstate 495 in Milford, Massachusetts. The decedent, Konstantin Kashper, was driving a 2016 Toyota Tacoma C-Cab pickup truck, northbound on I-495 when his vehicle left the roadway and landed on its roof. He was pronounced dead at Milford Regional Medical Center that evening.

At the time of the accident, Mr. Kashper was operating a vehicle leased by his employer, Borrego Solar Systems, Inc., who leased the vehicle from Enterprise. Following the accident, plaintiff brought product liability claims against Toyota and Enterprise.

According to the Court's Scheduling Order, the parties were required to file Motions for Summary Judgment on or before November 1, 2018. On August 13, 2018, Enterprise filed its Motion for Summary Judgment. Plaintiff filed her Opposition to Enterprise's Motion for Summary Judgment on September 4, 2018. The hearing on this Motion is currently scheduled for November 29, 2018.

In an attempt to settle this matter prior to the hearing on the Motion for Summary Judgment, counsel for Enterprise and plaintiff engaged in telephone and e-mail correspondence. On October 25, 2018, plaintiff agreed to settle the claims in this matter with Enterprise. On October 26, 2018, counsel for Enterprise sent plaintiff's counsel an e-mail confirming the oral settlement agreement made on October 25, 2018. See Exhibit 1.[1] Plaintiff's counsel responded by stating, "No, just to the product related claims." Id. This correspondence confirms that there was a settlement agreement as to the claims against Enterprise in this Court action, as product claims were the only claims brought against Enterprise. Id. On October 29, 2018, counsel for Enterprise requested a

---

[1] Only the monetary amount of the settlement has been redacted from the attached exhibits from the Court based on confidentiality. If this Court so Orders, Enterprise will produce the unredacted exhibits.

copy of plaintiff's counsel's firm's Form W-9 in preparation for settlement. See Exhibit 2. On October 30, 2018, in response to this request, plaintiff again confirmed settlement as to "all claims relating to product defect." See Exhibit 3. On November 1, 2018, plaintiff's counsel was sent a proposed Global Settlement Agreement from Toyota and Enterprise. See Exhibit 4(e-mail without attachment). After receiving no response regarding the proposed Settlement Agreement, and no response to multiple follow-up correspondence by Toyota's counsel, counsel for Enterprise sent a follow-up e-mail on November 15, 2018 with a proposed Notice of Settlement to file with the court. See Exhibit 5. The same day, counsel for plaintiff responded by stating he could not agree at this time, did not provide any revisions to the proposed Settlement Agreement, but stated he would draft a separate Settlement Agreement between Enterprise and plaintiff. See Exhibit 6. On November 19, 2018, after not receiving a draft Settlement Agreement from plaintiff, counsel for Enterprise sent plaintiff's counsel a proposed Settlement Agreement and provided a specific caveat for plaintiff's separate workers compensation claim as requested by plaintiff. See Exhibit 7. On November 21, 2018, plaintiff's counsel requested numerous revisions of the Settlement Agreement that included unnecessary sections relating to two separate cases that do not impact the settlement of this case and moreover, do not name the Enterprise defendants as parties. See Exhibit 8. On the same day, counsel for Enterprise sent a revised Settlement Agreement to plaintiff with revisions and again sought approval of the Notice of Settlement. See Exhibit 9. On November 26, 2018, plaintiff's counsel informed counsel for Enterprise that the Settlement Agreement is unacceptable as it does not contain information relating to an outstanding lien that is the subject of a separate workers compensation case. See Exhibit 10. In response, Enterprise counsel has made it abundantly clear that it is not counsel for the lien holder and that adding issues relating to separate

pending litigation is not appropriate for this Settlement Agreement. Id. As such, the parties have not been able to execute a Settlement Agreement.

## II. ARGUMENT

### A. There is a Binding and Enforceable Settlement

The settlement at issue is enforceable as a contract. When parties engaged in civil litigation decide to settle their dispute by agreeing to certain stipulated terms, they become parties to a binding contract. Settlement agreements are contracts and courts generally interpret their terms as such. T & T Mfg. Co. v. A.T. Cross Co., 587 F.2d 533, 537 (1st Cir. 1978), cert. denied, 441 U.S. 908, 99 S.Ct. 2000 (1979). A party may seek to enforce a settlement agreement by motion before the underlying matter is dismissed. Roman-Oliveras v. Puerto Rico Elec. Power Auth., 797 F.3d 83, 86 (1st Cir. 2015) (federal district court with subject matter jurisdiction over a dispute may enforce settlement prior to dismissal of the suit); Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999) ("A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges."); *see generally*, Dankese v. Defense Logistics Agency, 693 F. 2d 13, 16 (1st Cir. 1982) (Court has the inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before it). "The trial court may summarily enforce the agreement, provided there is no genuinely disputed question of material fact regarding the existence or terms of that agreement." Fidelity and Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008).

It is well settled that in a matter arising under the Court's diversity jurisdiction where there is a challenge to an enforceable settlement agreement, the forum state's law rules. *See* Hansen v. Rhode Island's Only 24–Hour Truck & Auto Plaza, Inc., 962 F. Supp. 2d 311, 314 (D. Mass. 2013)

("federal court sitting in diversity applies the choice-of-law framework of the forum state") (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

With regard to settlements and Massachusetts law, "[a]n enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." Targus Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010). "An enforceable settlement agreement arises in Massachusetts when all of the parties to be bound mutually assent to all material terms, *even if those terms are not memorialized in a final writing*." (Emphasis added). Bistany v. PNC Bank, NA, 585 F.Supp.2d 179, 182 (D. Mass. 2008) (citations omitted). Thus, "an oral settlement agreement 'is permissible.'" Eswarappa v. Shed Inc./Kid's Club, 685 F. Supp. 2d 229, 232 (D. Mass. 2010), and cases cited (citation omitted);; Coleman v. Norris, 2018 WL 3314543 (Mass. App. 2018) (upholding enforcement of settlement agreement and noting that determination of whether parties' communications constituted contractual agreement was an interpretation of law and a reading of the plain language in the parties communications).

It is well-established that "[p]olicy favors the enforcement of settlement agreements so as to hold people to the contracts they make and to avoid costly and time-consuming litigation." Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc., 962 F. Supp. 2d 311, 315 (D. Mass. 2013) (*citing* T & T Mfg. Co., 587 F.2d at 538 (1st Cir. 1978)); see also Quint v. A.E. Staley Mfg. Co., 246 F.3d 11 (1st Cir. 2001) (affirming trial court's enforcement of the parties' settlement agreement where parties had agreed on all material terms).

Here, there is no question that the parties confirmed the settlement in this matter for an agreed-to monetary amount on October 26, 2018. Moreover, all of the parties were represented by counsel who had full, actual, and apparent authority to act on their behalf. Hubbard v. Peairs,

24 Mass. App. Ct. 372, 377 (1989). Indeed, plaintiff's agreement to settle, as represented by her counsel, was confirmed twice by stating the settlement of "all claims relating to product defect." See Exhibit 1 and Exhibit 3. Enterprise argues that the response received from plaintiff's counsel is a confirmation of settlement as there are only product related claims brought against the Enterprise entities within this specific case. Id. Regardless of plaintiff's reference to other separate pending litigation, plaintiff agreed to a settlement and the dismissal of the Enterprise defendants in this specific case. Relying on that representation, counsel for Enterprise provided plaintiff's counsel with a draft Settlement Agreement. Additionally, plaintiff's counsel also provided a Settlement Agreement. As such, a binding settlement was clearly entered into and it is proper for this Court to enforce it.

**B.      Attorneys' Fees and Costs are Appropriate Given Plaintiff's Bad Faith**

This Court has the inherent power to award attorneys' fees against a litigant who has "acted in bad faith" or "vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991); Mullane v. Chambers, 333 F.3d 322, 337 (1st Cir. 2003). In determining whether sanctions are appropriate, the Court must consider "the presence or absence of any bad faith or obdurate conduct on the part of either party, or any unjust hardship that a grant or denial of fee-shifting might impose." Farone v. Sciarretta, 131 F.R.D. 29, 30 (D.R.I. 1990). Bad faith includes delay or disruption of the litigation. Sanchez v. Esso Standard Oil de P.R., Inc., Civil No. 08–2151 (JAF), 2010 WL 3809990, at *18 (D.P.R. Sept. 29, 2010). See Exhibit 8.

This is the exceptional case where the Court must award Enterprise its attorneys' fees and costs in seeking enforcement of the settlement. There remains no justification whatsoever for plaintiff's failure to inform this Court of the Settlement or execute the Settlement Agreement more than a month after the parties agreed to settle this matter and plaintiff's counsel continues to make

it impossible to come to an agreement. Moreover, plaintiff's counsel insists on including language relating to two separate lawsuits in the Settlement Agreement and is putting forth a document that has terms and issues that do not relate to the settlement of this specific case. Plaintiff's conduct is the very definition of vexatious, wanton and bad faith, and should not be condoned.

Plaintiff's actions have caused unnecessary waste and expense.  Given the bad faith and continued vexatious actions of plaintiff and her counsel, an award of attorneys' fees and costs is mandated and well within this Court's discretionary authority. Indeed, the monetary sanction composed of the fees and costs incurred in having to draft and press this Motion is entirely reasonable and otherwise "necessary not only to address [plaintiff's] conduct, but also 'to deter those who might be tempted to such conduct in the absence of such a deterrent.'"  Perry, *supra, quoting* John's Insulation, Inc. v. L. Addison & Assocs., Inc., 156 F. 3d 101, 108 (1st Cir. 1998).

### III.   CONCLUSION

Wherefore, defendants, Enterprise FM Trust and Enterprise Fleet Management respectfully request that this Motion be allowed and that plaintiff be ordered to comply with the Settlement Agreement, execute a Release with respect to all claims against defendants, Enterprise FM Trust and Enterprise Fleet Management for the agreed monetary amount, and execute a Stipulation of Dismissal with prejudice and without costs.  Defendants, Enterprise FM Trust and Enterprise Fleet Management further request that the Court order plaintiff to reimburse Enterprise FM Trust and Enterprise Fleet Management for all costs associated with the filing of this Motion and the enforcement of the Settlement Agreement.

                                                The Defendants,
                                                Enterprise FM Trust,
                                                Enterprise Fleet Management,
                                                By Its Attorneys,

*/s/Grace V.B. Garcia*
*/s/ Kate A. Messinger*_____
Grace V.B. Garcia, BBO #640970
ggarcia@morrisonmahoney.com
Kate A. Messinger, BBO #691468
kmessinger@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone:   617-737-8822
Fax:       617-342-4914

## **RULE 7.1 CERTIFICATE**

      Pursuant to Local Rule 7.1. I certify that prior to drafting this Motion I, counsel for Enterprise FM Trust and Enterprise Fleet Management, consulted with Marc Alpert, counsel for the plaintiff through multiple e-mail exchanges in an attempt to inform the Court of the settlement and finalize such. However, despite good faith efforts, we are unable to come to a resolution. Thus, this Motion is necessary.

                                                */s/ Grace V.B. Garcia*_____
                                                Grace V.B. Garcia

## **CERTIFICATE OF SERVICE**

On November 27, 2018, I, Kate A. Messinger, filed electronically and served by mail on anyone unable to accept electronic filing the foregoing document. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Kate A. Messinger*_____
Kate A. Messinger