UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNA V. KASHPER, individually, and as mother and next friend of Three Minors and as personal representative of the ESTATE OF KONSTANTIN M. KASHPER, <br><br> Plaintiff, <br><br> VS. <br><br> TOYOTA MOTOR SALES, U.S.A., INC.; TOYOTA MOTOR CORPORATION; ENTERPRISE FM TRUST; ENTERPRISE FLEET MANAGEMENT; JOHN DOE 1; JOHN DOE 2 and JOHN DOE 3, <br><br> Defendants. | C.A. No. 1:17-cv-12462-WGY |

**TOYOTA MOTOR SALES, U.S.A., INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

On January 26, 2017, Konstantin Kashper was driving a 2016 Toyota Tacoma pickup truck that went off Route 495 in Milford, Massachusetts, struck a rock formation, and rolled over. Mr. Kashper was found unresponsive at the scene and later pronounced dead at Milford Regional Medical Center. The plaintiff filed this lawsuit against Toyota Motor Sales, U.S.A., Inc. ("TMS"), Enterprise FM Trust, and Enterprise Fleet Management alleging that the 2016 Tacoma was defective and unreasonably dangerous because it had a rear differential oil leak and a defective driver's seatbelt. The plaintiff disclosed no expert to support these claims. There is no evidence that (a) the Tacoma was in a defective and unreasonably dangerous condition when it was sold or at the time of the accident, or (b) that any such defect caused the accident or Mr. Kashper's death. The undisputed facts prove that the Tacoma did not have a rear differential oil

leak, that the seatbelt was not defective, and that Mr. Kashper was not even wearing the seatbelt at the time of the crash. Under Massachusetts law, expert testimony is required to prove that a product is defective and unreasonably dangerous; because the plaintiff has not disclosed any expert to offer such an opinion, TMS is entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

This case arises out of a single-vehicle accident that occurred on January 29, 2017 on Interstate 495 in Milford, Massachusetts. Statement of Undisputed Material Facts ("SUMF") at ¶ 1. The decedent, Konstantin Kashper, was driving a 2016 Toyota Tacoma pickup truck northbound on I-495 when, for unknown reasons, his vehicle left the roadway, traveled over an embankment, struck a rock formation, and did a half-roll before landing on its roof. *Id.* at ¶¶ 1–2. Witnesses and first responders arrived on the scene shortly thereafter, all of whom observed Mr. Kashper to be unresponsive. *Id.* at ¶ 9. He was pronounced dead at Milford Regional Medical Center shortly thereafter. *Id.* at ¶ 10.

Although the speed limit at the location of the accident was 65 miles per hour, the uncontroverted evidence from the Tacoma's electronic data recorder ("EDR") proves that Mr. Kashper was traveling only 41 miles per hour approximately five seconds before striking the rock formation. *Id.* at ¶¶ 3–4. The EDR data also confirms that Mr. Kashper did not steer the Tacoma or depress either the brake pedal or accelerator, and there is no evidence that Mr. Kashper took any evasive action immediately prior to going off the paved roadway. *Id.* at ¶¶ 5, 7–8.

The plaintiff originally claimed that the 2016 Toyota Tacoma was defective because it was subject to a recall concerning the possibility of a rear differential oil leak; however, inspections of the vehicle conclusively established that there was no such oil leak. *Id.* at ¶¶ 12–

13, 26.  EDR data, corroborated by a scene inspection conducted by Massachusetts State Police accident reconstructionist Trooper Kiel Dzivasen, confirms that at the time of the accident the tires were rotating properly and there was nothing wrong with the Tacoma's rear axle or differential.  *Id.* at ¶¶ 14, 26.

The plaintiff further alleged that the driver's seatbelt was defective and should have protected Mr. Kashper during the accident; however, the undisputed evidence demonstrates that Mr. Kashper was not wearing his seatbelt at the time of the accident and that the driver's seatbelt was not defective in any way.  *Id.* at ¶¶ 15–20, 22–24.  The plaintiff claimed that the driver's seatbelt may have been falsely latched at the time of the accident or experienced an inadvertent or inertial release during the rollover; again however, the uncontroverted evidence in the case proves there was no false latch or inertial release and that Mr. Kashper's seatbelt was not engaged at any time immediately prior to or during the accident event.  *Id.* at ¶¶ 16, 19–24.

The only conclusion that can be drawn from the uncontroverted evidence in this case is that Mr. Kashper experienced a medical event that caused him to lose control of the vehicle and go off the road.  *Id.* at ¶ 25.  There is no evidence that the Tacoma was in a defective and unreasonably dangerous condition when it was sold or at the time of the accident, or that any such defect caused the accident or Mr. Kashper's death.  *Id.* at ¶¶ 28–30.

The plaintiff has not disclosed any expert who will opine that the Tacoma was in an unreasonably dangerous and defective condition when it was sold or at the time of the accident.  *Id.* at ¶¶ 28–29.  The plaintiff also has not disclosed any expert who will opine that a defect in the Tacoma was the cause of Mr. Kashper's death.  *Id.* at ¶ 30.

The undisputed evidence in this case is that the Tacoma's handling and stability systems and driver's seatbelt system comply with industry custom and practices, are reasonably safe, and

are not defective as alleged by the plaintiff. *Id.* at ¶¶ 27–29. Scene and vehicle inspections conducted by three separate experts confirm that there was no oil leak in the Tacoma's rear differential and that Mr. Kashper was not wearing his seatbelt at the time of the accident. *Id.* at ¶¶ 13, 19–22, 26.

Further, the plaintiff has not disclosed any expert to opine, and there is no evidence to support the plaintiff's allegation, that the accident or Mr. Kashper's death were caused by any defect in the Tacoma. *Id.* at ¶¶ 11, 30. Absent any evidence of defect or causation, the plaintiff cannot prevail on her claims against TMS and summary judgment should be granted.

## ARGUMENT

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Conway v. Boston Edison Co.*, 745 F. Supp. 773, 777 (D. Mass. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). The Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Massachusetts Inst. of Tech. v. Harman Int'l Indus., Inc.*, 584 F. Supp. 2d 297, 308 (D. Mass. 2008) (quoting *Celotex*, 477 U.S. at 322). Because the plaintiff has presented no evidence, through expert testimony or otherwise, that the 2016 Tacoma was defective and unreasonably dangerous, that TMS was negligent, or that any defect or negligence caused Mr. Kashper's death, she cannot prove essential elements of her claims and summary judgment must be entered for TMS. *See* SUMF at ¶¶ 28–30.

### 1. TMS is Entitled to Summary Judgment because There is No Evidence the 2016 Tacoma was Defective and Unreasonably Dangerous

In Massachusetts, the implied warranty of merchantability is codified in Mass. Gen. Laws ch. 106, § 2-314, which provides, *inter alia*, that goods must be "fit for the ordinary purposes for which such goods are used." § 2-314(2)(c). Massachusetts warranty law has been interpreted as being congruent in nearly all respects with the strict liability principles in the Restatement (Second) of Torts § 402A. *See Back v. Wickes Corp.*, 378 N.E.2d 964, 969 (Mass. 1978). Therefore, under Massachusetts breach of warranty law, a manufacturer or designer of a product is not liable for damages caused by its product unless the product was sold in an *unreasonably dangerous and defective condition*. *See id.*

When a negligent design claim is alleged, the same factors that are relevant in evaluating a product's design in a warranty case are also controlling on the issue of whether the defendant was negligent in adopting the particular design. *See id.* at 970; *Fahey v. Rockwell Graphic Sys., Inc.*, 482 N.E.2d 519, 523–25 (Mass. App. Ct. 1985). Therefore, under both her legal claims of negligence and breach of warranty, the plaintiff must prove that the subject Tacoma was in an unreasonably dangerous and defective condition when it was sold and at the time of the accident. *Comm. v. Johnson Insulation*, 682 N.E.2d 1323, 1330–31 (Mass. 1997). There is no duty on the part of a product designer to develop products that are accident-proof or risk free. *Morrell v. Precise Eng'g, Inc.*, 630 N.E.2d 291, 293 (Mass. App. Ct. 1994); *Tibbetts v. Ford Motor Co.*, 358 N.E.2d 460, 461 (Mass. App. Ct. 1976). A product designer's duty is not perfection, but rather to exercise reasonable care in the design of a product that is reasonably fit for its intended purposes. *Tibbetts*, 358 N.E.2d at 461. A product designer does not have a duty to develop only the safest kind of product; rather, its duty is to sell a product which is *reasonably* safe. *Mitchell*

*v. Ford Motor Co.*, 533 F.2d 19, 20 (1st Cir. 1976); *Johnson Insulation*, 682 N.E.2d at 1330–31; *Back*, 378 N.E.2d at 970.

Under Massachusetts law, expert testimony is required to prove that a product is unreasonably dangerous or defective in its design unless "a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury." *Smith v. Ariens Co.*, 377 N.E.2d 954 (Mass. 1978). This case does not fall within the exception identified by the SJC in *Smith v. Ariens Company*, because the plaintiff has alleged defects in the 2016 Tacoma involving complex issues of mechanical engineering and medical causation. *See Madigan v. Gen. Motors Corp.*, 899 N.E.2d 118 (Mass. App. Ct. 2009) (table) (determining that expert testimony was required in case alleging a defective airbag because "[a] full understanding of the deployment of an airbag, which involves the synergy of mechanical, electrical, and chemical subsystems, is beyond the ordinary lay knowledge of a juror and requires expert testimony"); *Lally v. Volkswagen Aktiengesellschaft*, 698 N.E.2d 28, 36 (1998) (noting the requirement for "expert medical testimony on highly technical medical issues, such as injury causation").

Technical and specialized engineering issues such as those raised by the plaintiff in this case are beyond the common experience and knowledge of ordinary lay jurors and require expert testimony. *See, e.g.*, *Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*, 573 F. Supp. 2d 372, 380 (D. Mass. 2008) (granting summary judgment on plaintiff's negligent design claim because the plaintiff "offered no expert testimony regarding any identifiable defect in the [gas-powered heater]"); *Haughton v. Hill Labs., Inc.*, No. 06-11217-RGS, 2007 WL 2484889, at *3 (D. Mass. 2007) (granting summary judgment on the plaintiff's breach of warranty claims due to the absence of expert testimony as to any defect in the topical cream at issue and providing that "[i]n

a products liability case of any sophistication, a plaintiff's failure to support her claims of a design defect with expert testimony is almost always fatal"); *Enrich v. Windmere Corp.*, 616 N.E.2d 1081, 1084 (Mass. 1993) (affirming directed verdict on the grounds that the plaintiff failed to introduce expert testimony necessary to establish that there was a defect in an electrical fan, and the defect was the cause of the fire); *Gofredo v. Mercedes-Benz Truck Co., Inc.*, 530 N.E.2d 1315, 1318–19 (Mass. 1988) (affirming directed verdict on plaintiff's breach of warranty claims on the grounds that a product defect must be established through expert testimony stated in terms of probabilities, providing that "[a]n expert opinion, stated in terms of possibilities, does not satisfy the plaintiff's burden of proof, namely, to establish by a preponderance of the evidence the existence of a design defect which caused the plaintiff's injuries"); *Morrell v. Precise Eng'g, Inc.*, 630 N.E.2d 291, 293 (Mass. App. Ct. 1994) (affirming order granting summary judgment on the grounds that plaintiff failed to provide an expert opinion to establish that the shape of the holes in brackets that attached scaffolding to a roof were defective and thus caused the scaffolding to collapse); *Gynan v. Jeep Corp.*, 434 N.E.2d 688, 691 (Mass. App. Ct. 1982) (affirming dismissal of plaintiff's case because the "[s]ubject of the placement of headlights and the illumination provided by them was a matter for expert testimony" and the plaintiff failed to present any such evidence); *Wiska v. St. Stanislaus Social Club, Inc.*, 390 N.E.2d 1133, 1137–38 (Mass. App. Ct. 1979) (affirming directed verdict on the grounds that "this was not a case in which the jury could find of their own lay knowledge that there existed a design defect in the 1964 Pontiac windshield exposing users to an unreasonable risk of injury").

As with each of the cases cited above, the plaintiff here has failed to disclose any expert to offer an opinion that the Tacoma was in a defective and unreasonably dangerous condition when it was sold or at the time of the accident. *See* SUMF at ¶¶ 28–30. The undisputed facts

prove that there was no rear differential oil leak or other defect that caused the Tacoma to lose control and go off the road. *Id.* at ¶¶ 13–14. Mr. Kashper did not depress the brake pedal or accelerator or take any evasive action for nearly five seconds prior to striking the rock formation; the only likely explanation for the accident is that Mr. Kashper experienced a medical event that caused him to lose control of the vehicle and go off the road. *Id.* at ¶¶ 11, 13–14, 25–26. Without an expert to testify that the 2016 Tacoma was unreasonably dangerous and defective in its design, "the claim fails as a matter of law." *See Pub. Serv. Mut. Ins.*, 573 F. Supp. 2d at 380; *see also Polaino v. Bayer Corp.*, 122 F. Supp. 2d 63, 71 (D. Mass. 2000) (granting summary judgment for the defendants on the grounds that "without [expert] testimony, plaintiff can prove neither a design defect nor causation").

      2. **TMS is Entitled to Summary Judgment because There is No Evidence That any Defect in the 2016 Tacoma Caused Mr. Kashper's Death**

The plaintiff also has not offered expert opinion that Mr. Kashper's injury or death were caused by any defect in the 2016 Tacoma. *See Williams v. Techtronic Indus., N.A.*, 2014 WL 2865874, *5 (D. Mass. June 23, 2014) ("In products liability cases, where the causal link between the alleged defect and the accident are beyond the ken of the jury, expert testimony is necessary to defeat summary judgment."); *Canavan's Case*, 733 N.E.2d 1042, 1051 (Mass. 2000) ("Because understanding medical causation is beyond the knowledge of the ordinary layman proof of if it must rest upon expert medical testimony." (internal citations omitted)); *see also Haughton*, No. 06-11217-RGS, 2007 WL 2484889, at *3 (finding that "without expert opinion, [the plaintiff] cannot meet her burden of showing that her injuries were proximately caused by a defect in the [product]").

The plaintiff has also failed to disclose any expert to offer an opinion that any defect in the Tacoma caused Mr. Kashper's injuries or death. SUMF at ¶¶ 28–30. The undisputed

evidence demonstrates not only that there was no defect in the driver's seatbelt, but that Mr. Kashper was not even wearing the seatbelt at the time of the accident. *Id.* at ¶¶ 17–18, 20–22, 27–29. Because the plaintiff has failed to identify an expert to opine that a defect in the Tacoma caused Mr. Kashper's death, her claim fails as a matter of law. *See Polaino*, 122 F. Supp. 2d at 71 (granting summary judgment in product liability case on the grounds that the plaintiff could not prove causation without expert testimony).

## CONCLUSION

Because the uncontroverted evidence in this case is that there was no defect in the 2016 Toyota Tacoma, and no evidence that any defect caused Konstantin Kashper's death, the plaintiff cannot prevail on two essential elements of her claims against TMS and summary judgment should be granted for TMS.

**TOYOTA MOTOR SALES, U.S.A., INC**
By its Attorneys,

CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.

/s/ *David M. Rogers*
James M. Campbell (BBO #541882)
David M. Rogers (BBO #542233)
Jacob J. Lantry (BBO #690452)
1 Constitution Wharf, Suite 310
Boston, MA 02129
Tel:   (617) 241-3000
Fax:   (617) 241-5115
jmcampbell@campbell-trial-lawyers.com
drogers@campbell-trial-lawyers.com
jlantry@campbell-trial-lawyers.com

## CERTIFICATE OF SERVICE

On December 14, 2018, I, David M. Rogers, filed electronically the foregoing document. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ David M. Rogers
David M. Rogers