# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:17-CV-12462

---

ANNA V. KASHPER, Individually and as
Mother and Next Friend of Three Minors and
as Personal Representative of the Estate of
KONSTANTIN M. KASHPER,

    Plaintiffs,

v.

TOYOTA MOTOR SALES, U.S.A., INC.
TOYOTA MOTOR CORPORATION,
CALTY DESIGN RESEARCH, INC.
TOYOTA TECHNICAL CENTER, U.S.A.,
INC.
ENTERPRISE FM TRUST
ENTERPRISE FLEET MANAGEMENT,
JOHN DOE 1,
JOHN DOE 2,
JOHN DOE 3,

    Defendants.

---

## AFFIDAVIT OF WILLIAM J. KELLER

I, do hereby state and depose as follows:

1. I am William J. Keller, AVP of Risk Operations for Enterprise Fleet Management.

2. My duties include overseeing Risk Operations for Enterprise Fleet Management.

3. Enterprise Fleet Management is a duly organized, privately held company, engaged in the long-term leasing of motor vehicles to duly licensed individuals and companies.

4. According to my review of Enterprise Fleet Management records, Borrego Solar Systems, Inc. leased a 2016 Toyota Tacoma motor vehicle pursuant to a lease agreement beginning July 6, 2016.

5. A true and accurate copy of the Open-End (Equity) Lease Rate Quote for the vehicle is attached.

6. Based on my review of records, this leased vehicle was involved in the accident involving Konstantin Kaspher on January 27, 2017.

7. Enterprise FM Trust was the registered owner of the vehicle at the time of the accident.

8. Enterprise FM Trust holds title to the motor vehicle leased by Enterprise Fleet Management.

9. Enterprise Fleet Management is in the business of leasing vehicles owned by Enterprise FM Trust. A true and accurate copy of the Master Equity Lease Agreement in this regard is attached.

10. According to my review of Enterprise records, Konstantin Kaspher has never been an employee of Enterprise FM Trust or Enterprise Fleet Management.

11. Konstantin Kaspher has never conducted any business on behalf of Enterprise FM Trust or Enterprise Fleet Management.

12. Konstantin Kaspher has never been an agent of Enterprise FM Trust or Enterprise Fleet Management.

13. Upon information and belief, Konstantin Kaspher had exclusive control of the vehicle leased by his employer, Borrego Solar Systems, Inc. and was operating said vehicle at the time of the subject accident.

14. At no time during the time in which the vehicle was leased, up until the time of the accident, did Enterprise FM Trust or Enterprise Fleet Management perform any repair, maintenance or other work on the vehicle at issue.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY
THIS  3  DAY OF  May , 2018.

_____
William J. Keller



# Open-End (Equity) Lease Rate Quote

Quote No: 3223901

Prepared For: Borrego Solar Systems, Inc.
Murphy, Matt

Date 06/03/2016
AE/AM M8S

Unit #
Year 2016  Make Toyota  Model Tacoma
Series SR (A6) 4x4 Access Cab 127.4 in. WB
Vehicle Order Type In-Stock  Term 48  State MA  Customer# 485988

| | | |
|---|---|---|
| $ 27,662.62 | Capitalized Price of Vehicle[1] | |
| $ 0.00 * | Sales Tax 0.0000% State MA | |
| $ 210.00 * | Initial License Fee | |
| $ 0.00 | Registration Fee | |
| $ 0.00 | Other:Courtesy Delivery Fee | |
| $ 0.00 | Capitalized Price Reduction | |
| $ 0.00 | Tax on Capitalized Price Reduction | |
| $ 0.00 | Gain Applied From Prior Unit | |
| $ 0.00 * | Tax on Gain On Prior | |
| $ 0.00 * | Security Deposit | |
| $ 0.00 | Extended Service Contract | |
| $ 27,662.62 | Total Capitalized Amount (Delivered Price) | |
| $ 414.94 | Depreciation Reserve @ 1.5000% | |
| $ 103.27 | Monthly Lease Charge (Based on Interest Rate - Subject to a Floor)[2] | |
| $ 518.21 | Total Monthly Rental Excluding Additional Services | |

All language and acknowledgments contained in the signed quote apply to all vehicles that are ordered under this signed quote.

**Order Information**
| | |
|---|---|
| Driver Name | Robbins, Scott |
| Exterior Color | (0 P) Super White |
| Interior Color | (0 I) Cement Gray w/Fabric Seat Trim (FB) or |
| Lic. Plate Type | Unknown |
| GVWR | 0 |

**Additional Fleet Management**
Master Policy Enrollment Fees

| | | | |
|---|---|---|---|
| $ 0.00 | Commercial Automobile Liability Enrollment | | |
| | Liability Limit $0.00 | | |
| $ 0.00 | Physical Damage Management | Comp/Coll Deductible | 0 / 0 |
| $ 76.76 | Full Maintenance Program[3]  Contract Miles 80,000 | OverMileage Charge | $ 0.0500 Per Mile |
| | Incl: # Brake Sets (1 set = 1 Axle) 2 | # Tires 4 | Loaner Vehicle Not Included |
| $ 76.76 | Additional Services SubTotal | | |
| $ 32.39 | Use Tax 6.2500% | State MA | |
| $ 627.36 | Total Monthly Rental Including Additional Services | | |
| $ 7,745.50 | Reduced Book Value at 48 Months | | |
| $ 375.00 | Service Charge Due at Lease Termination | | |

Quote based on estimated annual mileage of 20,000
(Current market and vehicle conditions may also affect value of vehicle)
(Quote is Subject to Customer's Credit Approval)
Notes

Enterprise FM Trust will be the owner of the vehicle covered by this Quote. Enterprise FM Trust (not Enterprise Fleet Management) will be the Lessor of such vehicle under the Master Open - End (Equity) Lease Agreement and shall have all rights and obligations of the Lessor under the Master Open - End (Equity) Lease Agreement with respect to such vehicle.

*ALL TAX AND LICENSE FEES TO BE BILLED TO LESSEE AS THEY OCCUR.*
Lessee hereby authorizes this vehicle order, agrees to lease the vehicle on the terms set forth herein and in the Master Equity Lease Agreement and agrees that Lessor shall have the right to collect damages in the event Lessee fails or refuses to accept delivery of the ordered vehicle.
Lessee certifies that it intends that more than 50% of the use of the vehicle is to be in a trade or business of the Lessee.

LESSEE Borrego Solar Systems, Inc.
BY [signature]  TITLE CFO  DATE 7/6/2016

* INDICATES ITEMS TO BE BILLED ON DELIVERY.
[1] Capitalized Price of Vehicle May be Adjusted to Reflect Final Manufacturer's Invoice. Lessee Hereby Assigns to Lessor any Manufacturer Rebates And/Or Manufacturer Incentives Intended for the Lessee, Which Rebates And/Or Incentives Have Been Used By Lessor to Reduce the Capitalized Price of the Vehicle.
[2] Monthly Lease Charge Will Be Adjusted to Reflect the Interest Rate on the Delivery Date (Subject to a Floor).
[3] The inclusion herein of references to maintenance fees/services are solely for the administrative convenience of Lessee. Notwithstanding the inclusion of such references in this [Invoice/Schedule/Quote], all such maintenance services are to be performed by Enterprise Fleet Management, Inc., and all such maintenance fees are payable by Lessee solely for the account of Enterprise Fleet Management, Inc., pursuant to that certain separate [Maintenance Agreement] entered into by and between Lessee and Enterprise Fleet Management, Inc.; provided that such maintenance fees are being billed by Enterprise FM Trust, and are payable at the direction of Enterprise FM Trust, solely as an authorized agent for collection on behalf of Enterprise Fleet Management, Inc.

Printed On 06/03/2016 04:36 PM                                                                                     Page 1 of 4



# Open-End (Equity) Lease Rate Quote

Quote No: 3223901

---

**VEHICLE INFORMATION:**

2016 Toyota Tacoma SR (A6) 4x4 Access Cab 127.4 in. WB - US
Series ID: 7514
Pricing Summary:

|  | INVOICE | MSRP |
|---|---|---|
| Base Vehicle | $ 25,064.00 | $ 26,735.00 |
| Total Options | $ 576.00 | $ 689.00 |
| Destination Charge | $ 900.00 | $ 900.00 |
| **Total Price** | **$ 26,540.00** | **$ 28,324.00** |

---

**SELECTED COLOR:**

Exterior:  040 - (0 P) Super White
Interior:  14 - (0 I) Cement Gray w/Fabric Seat Trim (FB) or Fabric Seat Trim (FA)

---

**SELECTED OPTIONS:**

| CODE | DESCRIPTION | INVOICE | MSRP |
|---|---|---|---|
| 040_01 | (0 P) Super White | NC | NC |
| 14_06 | (0 I) Cement Gray w/Fabric Seat Trim (FB) or Fabric Seat Trim (FA) | NC | NC |
| 6AT | Transmission: 6-Speed Automatic | STD | STD |
| CF | Carpet Floor Mats (PPO) | $ 149.00 | $ 209.00 |
| CL | Cruise Control | Included | Included |
| DSIL | Door Sill Protectors | Included | Included |
| ENKEY | Remote Keyless Entry | Included | Included |
| FB | Fabric Seat Trim (FB) | STD | STD |
| FE | 50 State Emissions | NC | NC |
| LL | SR Convenience Package | $ 427.00 | $ 480.00 |
| NATL | National Region | NC | NC |
| NONAX | Axle Ratio: 4.30 | STD | STD |
| PAINT | Monotone Paint Application | STD | STD |
| STDEN | Engine: 2.7L I-4 DOHC 16-Valve | STD | STD |
| STDGV | GVWR: 5,600 lbs | STD | STD |
| STDRD | Radio: Entune AM/FM/CD | STD | STD |
| STDST | Front Bucket Seats | STD | STD |
| STDTR | Tires: P245/75R16 AS | STD | STD |
| STDWL | Wheels: 16" x 7J+30 Style Steel Disc | STD | STD |

CONFIGURED FEATURES:

Body Exterior Features:
    Number Of Doors  4
    Rear Driver Door:  reverse opening rear passenger doors
    Rear Cargo Door Type:  tailgate
    Driver And Passenger Mirror:  manual remote folding side-view door mirrors
    Door Handles:  body-coloured
    Front And Rear Bumpers:  body-coloured front and rear bumpers
    Rear Step Bumper:  rear step bumper
    Front Tow Hooks:  1 front and rear tow hooks
    Box Style:  regular composite
    Integrated Storage:  pickup integrated storage
    Body Material:  fully galvanized steel body material
    Grille:  black w/chrome surround grille

Convenience Features:
    Air Conditioning  manual air conditioning
    Air Filter:  air filter
    Cruise Control:  cruise control with steering wheel controls
    Power Windows:  power windows with driver 1-touch down
    Remote Keyless Entry:  keyfob (front doors) remote keyless entry
    Illuminated Entry:  Illuminated entry
    Steering Wheel:  steering wheel with manual tilting, manual telescoping
    Day-Night Rearview Mirror:  day-night rearview mirror
    Front Cupholder:  front and rear cupholders
    Floor Console:  full floor console with covered box
    Overhead Console:  mini overhead console with storage
    Other Console:  rear console with storage
    Glove Box:  locking glove box
    Driver Door Bin:  driver and passenger door bins
    Rear Door Bins:  rear door bins
    Interior Concealed Storage:  interior concealed storage
    IP Storage:  bin instrument-panel storage
    Rear Underseat Storage Tray:  rear underseat storage tray
    Driver Footrest:  driver's footrest
    Retained Accessory Power:  retained accessory power
    Power Accessory Outlet:  2 12V DC power outlets

Entertainment Features:
    radio  AM/FM stereo with seek-scan, single in-dash CD player
    MP3 Player:  MP3 decoder
    Voice Activated Radio:  voice activated radio
    Speed Sensitive Volume:  speed-sensitive volume
    Steering Wheel Radio Controls:  steering-wheel mounted audio controls
    Speakers:  12 speakers
    1st Row LCD:  1 1st row LCD monitor
    Wireless Connectivity:  wireless phone connectivity
    Antenna:  Integrated roof antenna

Lighting, Visibility and Instrumentation Features:
    Headlamp Type  projector beam halogen headlamps
    Rear Window:  sliding rear windshield
    Tinted Windows:  light-tinted windows
    Dome Light:  dome light with fade
    Front Reading Lights:  front reading lights
    Variable IP Lighting:  variable instrument panel lighting
    Display Type:  analog display
    Tachometer:  tachometer
    Exterior Temp:  outside-temperature display
    Low Tire Pressure Warning:  low-tire-pressure warning
    Trip Odometer:  trip odometer
    Water Temp Gauge:  water temp. gauge
    Clock:  in-radio display clock
    Rear Vision Camera:  rear vision camera

Oil Pressure Warning: oil-pressure warning
Battery Warning: battery warning
Key in Ignition Warning: key-in-ignition warning
Low Fuel Warning: low-fuel warning
Door Ajar Warning: door-ajar warning
Brake Fluid Warning: brake-fluid warning

Safety And Security:
ABS  four-wheel ABS brakes
Number of ABS Channels: 4 ABS channels
Brake Assistance: brake assist
Brake Type: front disc/rear drum brakes
Vented Disc Brakes: front ventilated disc brakes
Daytime Running Lights: daytime running lights
Spare Tire Type: full-size spare tire
Spare Tire Mount: underbody mounted spare tire w/crankdown
Driver Front Impact Airbag: driver and passenger front-impact airbags
Driver Side Airbag: seat-mounted driver and passenger side-impact airbags
Overhead Airbag: curtain 1st and 2nd row overhead airbag
Knee Airbag: knee airbag
Occupancy Sensor: front passenger airbag occupancy sensor
Height Adjustable Seatbelts: height adjustable front seatbelts
Seatbelt Pretensioners: front seatbelt pre-tensioners
Side Impact Bars: side-impact bars
Tailgate/Rear Door Lock Type: tailgate/rear door lock included with power door locks
Ignition Disable: immobilizer
Panic Alarm: panic alarm
Electronic Stability: electronic stability
Traction Control: ABS and driveline traction control
Front and Rear Headrests: manual adjustable front head restraints
AntiWhiplashFrontHeadrests: anti-whiplash front head restraints
Rear Headrest Control: 2 rear head restraints

Seats And Trim:
Seating Capacity  max. seating capacity of 4
Front Bucket Seats: front bucket seats
Number of Driver Seat Adjustments: 4-way driver and passenger seat adjustments
Reclining Driver Seat: manual reclining driver and passenger seats
Driver Lumbar: manual driver and passenger lumbar support
Driver Fore/Aft: manual driver and passenger fore/aft adjustment
Front Centre Armrest Storage: front centre armrest
Rear Seat Type: rear jump seat
Rear Folding Position: rear seat fold-up cushion
Leather Upholstery: cloth front and rear seat upholstery
Door Trim Insert: cloth door panel trim
Headliner Material: full cloth headliner
Full Carpet Floor Covering: carpet floor covering
Dashboard Console Insert, Door Panel Insert Combination: cloth instrument panel insert, door panel insert, console insert
Shift Knob Trim: urethane shift knob
Floor Mats: carpet front and rear floor mats
Interior Accents: chrome and metal-look interior accents

Standard Engine:
Engine  159-hp, 2.7-liter I-4 (regular gas)

Standard Transmission:
Transmission  6-speed automatic w/ OD

## MASTER EQUITY LEASE AGREEMENT

This Master Equity Lease Agreement is entered into this eleventh day of November, 2014, by and between Enterprise FM Trust, a Delaware statutory trust ("Lessor"), and the lessee whose name and address is set forth on the signature page below ("Lessee").

1. **LEASE OF VEHICLES:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the vehicles (individually, a "Vehicle" and collectively, the "Vehicles") described in the schedules from time to time delivered by Lessor to Lessee as set forth below ("Schedule(s)") for the rentals and on the terms set forth in this Agreement and in the applicable Schedule. References to this "Agreement" shall include this Master Equity Lease Agreement and the various Schedules and addenda to this Master Equity Lease Agreement. Lessor will, on or about the date of delivery of each Vehicle to Lessee, send Lessee a Schedule covering the Vehicle, which will include, among other things, a description of the Vehicle, the lease term and the monthly rental and other payments due with respect to the Vehicle. The terms contained in each such Schedule will be binding on Lessee unless Lessee objects in writing to such Schedule within ten (10) days after the date of delivery of the Vehicle covered by such Schedule. Lessor is the sole legal owner of each Vehicle. This Agreement is a lease only and Lessee will have no right, title or interest in or to the Vehicles except for the use of the Vehicles as described in this Agreement. This Agreement shall be treated as a true lease for federal and applicable state income tax purposes with Lessor having all benefits of ownership of the Vehicles. It is understood and agreed that Enterprise Fleet Management, Inc. or an affiliate thereof (together with any subservicer, agent, successor or assign as servicer on behalf of Lessor, "Servicer") may administer this Agreement on behalf of Lessor and may perform the service functions herein provided to be performed by Lessor.

2. **TERM:** The term of this Agreement ("Term") for each Vehicle begins on the date such Vehicle is delivered to Lessee (the "Delivery Date") and, unless terminated earlier in accordance with the terms of this Agreement, continues for the "Lease Term" as described in the applicable Schedule.

3. **RENT AND OTHER CHARGES:**
(a) Lessee agrees to pay Lessor monthly rental and other payments according to the Schedules and this Agreement. The monthly payments will be in the amount listed as the "Total Monthly Rental Including Additional Services" on the applicable Schedule (with any portion of such amount identified as a charge for maintenance services under Section 4 of the applicable Schedule being payable to Lessor as agent for Enterprise Fleet Management, Inc.) and will be due and payable in advance on the first day of each month. If a Vehicle is delivered to Lessee on any day other than the first day of a month, monthly rental payments will begin on the first day of the next month. In addition to the monthly rental payments, Lessee agrees to pay Lessor a pro-rated rental charge for the number of days that the Delivery Date precedes the first monthly rental payment date. A portion of each monthly rental payment, being the amount designated as "Depreciation Reserve" on the applicable Schedule, will be considered as a reserve for depreciation and will be credited against the Delivered Price of the Vehicle for purposes of computing the Book Value of the Vehicle under Section 3(c). Lessee agrees to pay Lessor the "Total Initial Charges" set forth in each Schedule on the due date of the first monthly rental payment under such Schedule. Lessee agrees to pay Lessor the "Service Charge Due at Lease Termination" set forth in each Schedule at the end of the applicable Term (whether by reason of expiration, early termination or otherwise).
(b) In the event the Term for any Vehicle ends prior to the last day of the scheduled Term, whether as a result of a default by Lessee, a Casualty Occurrence or any other reason, the rentals and management fees paid by Lessee will be recalculated in accordance with the rule of 78's and the adjusted amount will be payable by Lessee to Lessor on the termination date.
(c) Lessee agrees to pay Lessor within thirty (30) days after the end of the Term for each Vehicle, additional rent equal to the excess, if any, of the Book Value of such Vehicle over the greater of (i) the wholesale value of such Vehicle as determined by Lessor in good faith or (ii) except as provided below, twenty percent (20%) of the Delivered Price of such Vehicle as set forth in the applicable Schedule. If the Book Value of such Vehicle is less than the greater of (i) the wholesale value of such Vehicle as determined by Lessor in good faith or (ii) except as provided below, twenty percent (20%) of the Delivered Price of such Vehicle as set forth in the applicable Schedule, Lessor agrees to pay such deficiency to Lessee as a terminal rental adjustment within thirty (30) days after the end of the applicable Term. Notwithstanding the foregoing, if (i) the Term for a Vehicle is greater than forty-eight (48) months (including any extension of the Term for such Vehicle), (ii) the mileage on a Vehicle at the end of the Term is greater than 15,000 miles per year on average (prorated on a daily basis) (i.e., if the mileage on a Vehicle with a Term of thirty-six (36) months is greater than 45,000 miles) or (iii) in the sole judgment of Lessor, a Vehicle has been subject to damage or any abnormal or excessive wear and tear, the calculations described in the two immediately preceding sentences shall be made without giving effect to clause (ii) in each such sentence. The "Book Value" of a Vehicle means the sum of (i) the "Delivered Price" of the Vehicle as set forth in the applicable Schedule minus (ii) the total Depreciation Reserve paid by Lessee to Lessor with respect to such Vehicle plus (iii) all accrued and unpaid rent and/or other amounts owed by Lessee with respect to such Vehicle.
(d) Any security deposit of Lessee will be refunded to Lessee at the end of the applicable Term, except that the deposit will first be applied to any losses and/or damages suffered by Lessor as a result of Lessee's breach of or default under this Agreement and/or to any other amounts then owed by Lessee to Lessor.
(e) Any rental payment or other amount owed by Lessee to Lessor which is not paid within twenty (20) days after its due date will accrue interest, payable on demand of Lessor, from the date due until paid in full at a rate per annum equal to the lesser of (i) Eighteen Percent (18%) per annum or (ii) the highest rate permitted by applicable law (the "Default Rate").
(f) If Lessee fails to pay any amount due under this Agreement or to comply with any of the covenants contained in this Agreement, Lessor, Servicer or any other agent of Lessor may, at its option, pay such amounts or perform such covenants and all sums paid or incurred by Lessor in connection therewith will be repayable by Lessee to Lessor upon demand together with interest thereon at the Default Rate.
(g) Lessee's obligations to make all payments of rent and other amounts under this Agreement are absolute and unconditional and such payments shall be made in immediately available funds without setoff, counterclaim or deduction of any kind. Lessee acknowledges and agrees that neither any Casualty Occurrence to any Vehicle nor any defect, unfitness or lack of governmental approval in, of, or with respect to, any Vehicle regardless of the cause or consequence nor any breach by Enterprise Fleet Management, Inc. of any maintenance agreement between Enterprise Fleet Management, Inc. and Lessee covering any Vehicle regardless of the cause or consequence will relieve Lessee from the performance of any of its obligations under this Agreement, including, without limitation, the payment of rent and other amounts under this Agreement.

4. **USE AND SURRENDER OF VEHICLES:** Lessee agrees to allow only duly authorized, licensed and insured drivers to use and operate the Vehicles. Lessee agrees to comply with, and cause its drivers to comply with, all laws, statutes, rules, regulations and ordinances and the provisions of all insurance policies affecting or covering the Vehicles or their use or operation. Lessee agrees to keep the Vehicles free of all liens, charges and encumbrances. Lessee agrees that in no event will any Vehicle be used or operated for transporting hazardous substances or persons for hire, for any illegal purpose or to pull trailers that exceed the manufacturer's trailer towing recommendations. Lessee agrees that no Vehicle is intended to be or will be utilized as a "school bus" as defined in the Code of Federal Regulations or any applicable state or municipal statute or regulation. Lessee agrees not to remove any Vehicle from the continental United States without first obtaining Lessor's written consent. At the expiration or earlier termination of this Agreement with respect to each Vehicle, or upon demand by Lessor made pursuant to Section 14, Lessee at its risk and expense agrees to return such Vehicle to Lessor at such place and by such reasonable means as may be designated by Lessor. If for any reason Lessee fails to return any Vehicle to Lessor as and when required in accordance with this Section, Lessee agrees to pay Lessor additional rent for such Vehicle at twice the normal pro-rated daily rent. Acceptance of such additional rent by Lessor will in no way limit Lessor's remedies with respect to Lessee's failure to return any Vehicle as required hereunder.

Initials: EFM_____ Cust MK

Page 1

5. **COSTS, EXPENSES, FEES AND CHARGES:** Lessee agrees to pay all costs, expenses, fees, charges, fines, tickets, penalties and taxes (other than federal and state income taxes on the income of Lessor) incurred in connection with the titling, registration, delivery, purchase, sale, rental, use or operation of the Vehicles during the Term. If Lessor, Servicer or any other agent of Lessor incurs any such costs or expenses, Lessee agrees to promptly reimburse Lessor for the same.

6. **LICENSE AND CHARGES:** Each Vehicle will be titled and licensed in the name designated by Lessor at Lessee's expense. Certain other charges relating to the acquisition of each Vehicle and paid or satisfied by Lessor have been capitalized in determining the monthly rental, treated as an initial charge or otherwise charged to Lessee. Such charges have been determined without reduction for trade-in, exchange allowance or other credit attributable to any Lessor-owned vehicle.

7. **REGISTRATION PLATES, ETC.:** Lessee agrees, at its expense, to obtain in the name designated by Lessor all registration plates and other plates, permits, inspections and/or licenses required in connection with the Vehicles, except for the initial registration plates which Lessor will obtain at Lessee's expense. The parties agree to cooperate and to furnish any and all information or documentation, which may be reasonably necessary for compliance with the provisions of this Section or any federal, state or local law, rule, regulation or ordinance. Lessee agrees that it will not permit any Vehicle to be located in a state other than the state in which such Vehicle is then titled for any continuous period of time that would require such Vehicle to become subject to the titling and/or registration laws of such other state.

8. **MAINTENANCE OF AND IMPROVEMENTS TO VEHICLES:**
(a) Lessee agrees, at its expense, to (i) maintain the Vehicles in good condition, repair, maintenance and running order and in accordance with all manufacturer's instructions and warranty requirements and all legal requirements and (ii) furnish all labor, materials, parts and other essentials required for the proper operation and maintenance of the Vehicles. Any alterations, additions, replacement parts or improvements to a Vehicle will become and remain the property of Lessor and will be returned with such Vehicle upon such Vehicle's return pursuant to Section 4. Notwithstanding the foregoing, so long as no Event of Default has occurred and is continuing, Lessee shall have the right to remove any additional equipment installed by Lessee on a Vehicle prior to returning such Vehicle to Lessor under Section 4. The value of such alterations, additions, replacement parts and improvements will in no instance be regarded as rent. Without the prior written consent of Lessor, Lessee will not make any alterations, additions, replacement parts or improvements to any Vehicle which detract from its economic value or functional utility. Lessor will not be required to make any repairs or replacements of any nature or description with respect to any Vehicle, to maintain or repair any Vehicle or to make any expenditure whatsoever in connection with any Vehicle or this Agreement.
(b) Lessor and Lessee acknowledge and agree that if Section 4 of a Schedule includes a charge for maintenance, (i) the Vehicle(s) covered by such Schedule are subject to a separate maintenance agreement between Enterprise Fleet Management, Inc. and Lessee and (ii) Lessor shall have no liability or responsibility for any failure of Enterprise Fleet Management, Inc. to perform any of its obligations thereunder or to pay or reimburse Lessee for its payment of any costs and expenses incurred in connection with the maintenance or repair of any such Vehicle(s).

9. **SELECTION OF VEHICLES AND DISCLAIMER OF WARRANTIES:**
(a) LESSEE ACCEPTANCE OF DELIVERY AND USE OF EACH VEHICLE WILL CONCLUSIVELY ESTABLISH THAT SUCH VEHICLE IS OF A SIZE, DESIGN, CAPACITY, TYPE AND MANUFACTURE SELECTED BY LESSEE AND THAT SUCH VEHICLE IS IN GOOD CONDITION AND REPAIR AND IS SATISFACTORY IN ALL RESPECTS AND IS SUITABLE FOR LESSEE'S PURPOSE. LESSEE ACKNOWLEDGES THAT LESSOR IS NOT A MANUFACTURER OF ANY VEHICLE OR AN AGENT OF A MANUFACTURER OF ANY VEHICLE.
(b) LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY VEHICLE, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, IT BEING AGREED THAT ALL SUCH RISKS ARE TO BE BORNE BY LESSEE. THE VEHICLES ARE LEASED "AS IS," "WITH ALL FAULTS." All warranties made by any supplier, vendor and/or manufacturer of a Vehicle are hereby assigned by Lessor to Lessee for the applicable Term and Lessee's only remedy, if any, is against the supplier, vendor or manufacturer of the Vehicle.
(c) None of Lessor, Servicer or any other agent of Lessor will be liable to Lessee for any liability, claim, loss, damage (direct, incidental or consequential) or expense of any kind or nature, caused directly or indirectly, by any Vehicle or any inadequacy of any Vehicle for any purpose or any defect (latent or patent) in any Vehicle or the use or maintenance of any Vehicle or any repair, servicing or adjustment of or to any Vehicle, or any delay in providing or failure to provide any Vehicle, or any information or loss of service or use of any Vehicle, or any loss of business or any damage whatsoever and however caused. In addition, none of Lessor, Servicer or any other agent of Lessor will have any liability to Lessee under this Agreement or under any order authorization form executed by Lessee if Lessor is unable to locate or purchase a Vehicle ordered by Lessee or for any delay in delivery of any Vehicle ordered by Lessee.

10. **RISK OF LOSS:** Lessee assumes and agrees to bear the entire risk of loss of, theft of, damage to or destruction of any Vehicle from any cause whatsoever ("Casualty Occurrence"). In the event of a Casualty Occurrence to a Vehicle, Lessee shall give Lessor prompt notice of the Casualty Occurrence and thereafter will place the applicable Vehicle in good repair, condition and working order; provided, however, that if the applicable Vehicle is determined by Lessor to be lost, stolen, destroyed or damaged beyond repair (a "Totaled Vehicle"), Lessee agrees to pay Lessor no later than the date thirty (30) days after the date of the Casualty Occurrence the amounts owed under Sections 3(b) and 3(c) with respect to such Totaled Vehicle. Upon such payment, this Agreement will terminate with respect to such Totaled Vehicle.

11. **INSURANCE:**
(a) Lessee agrees to purchase and maintain in force during the Term, insurance policies in at least the amounts listed below covering each Vehicle, to be written by an insurance company or companies satisfactory to Lessor, insuring Lessee, Lessor and any other person or entity designated by Lessor against any damage, claim, suit, action or liability:
(i) Commercial Automobile Liability Insurance (including Uninsured/Underinsured Motorist Coverage and No-Fault Protection where required by law) for the limits listed below (Note - $5,000,000 Combined Single Limit Bodily Injury and Property Damage with No Deductible is required for each Vehicle capable of transporting more than 8 passengers):

| State of Vehicle Registration | Coverage |
|---|---|
| Connecticut, Massachusetts, Maine, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont | $1,000,000 Combined Single Limit Bodily Injury and Property Damage - No Deductible |
| Florida | $500,000 Combined Single Limit Bodily Injury and Property Damage or $100,000 Bodily Injury Per Person, $300,000 Per Occurrence and $50,000 Property Damage (100/300/50) - No Deductible |
| All Other States | $300,000 Combined Single Limit Bodily Injury and Property Damage or $100,000 Bodily Injury Per Person, $300,000 Per Occurrence and $50,000 Property Damage (100/300/50) - No Deductible |

(ii) Physical Damage Insurance (Collision & Comprehensive): Actual cash value of the applicable Vehicle. Maximum deductible of $500 per occurrence - Collision and $250 per occurrence - Comprehensive).

Initials: EFM_____ Cust _MH_     Page 2

If the requirements of any governmental or regulatory agency exceed the minimums stated in this Agreement, Lessee must obtain and maintain the higher insurance requirements. Lessee agrees that each required policy of insurance will by appropriate endorsement or otherwise name Lessor and any other person or entity designated by Lessor as additional insureds and loss payees, as their respective interests may appear. Further, each such insurance policy must provide the following: (i) that the same may not be cancelled, changed or modified until after the insurer has given to Lessor, Servicer and any other person or entity designated by Lessor at least thirty (30) days prior written notice of such proposed cancellation, change or modification, (ii) that no act or default of Lessee or any other person or entity shall affect the right of Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns to recover under such policy or policies of insurance in the event of any loss of or damage to any Vehicle and (iii) that the coverage is "primary coverage" for the protection of Lessee, Lessor, Servicer, any other agent of Lessor and their respective successors and assigns notwithstanding any other coverage carried by Lessee, Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns protecting against similar risks. Original certificates evidencing such coverage and naming Lessor, Servicer, any other agent of Lessor and any other person or entity designated by Lessor as additional insureds and loss payees shall be furnished to Lessor prior to the Delivery Date, and annually thereafter and/or as reasonably requested by Lessor from time to time. In the event of default, Lessee hereby appoints Lessor, Servicer and any other agent of Lessor as Lessee's attorney-in-fact to receive payment of, to endorse all checks and other documents and to take any other actions necessary to pursue insurance claims and recover payments if Lessee fails to do so. Any expense of Lessor, Servicer or any other agent of Lessor in adjusting or collecting insurance shall be borne by Lessee.

Lessee, its drivers, servants and agents agree to cooperate fully with Lessor, Servicer, any other agent of Lessor and any insurance carriers in the investigation, defense and prosecution of all claims or suits arising from the use or operation of any Vehicle. If any claim is made or action commenced for death, personal injury or property damage resulting from the ownership, maintenance, use or operation of any Vehicle, Lessee will promptly notify Lessor of such action or claim and forward to Lessor a copy of every demand, notice, summons or other process received in connection with such claim or action.

(b) Notwithstanding the provisions of Section 11(a) above: (i) If Section 4 of a Schedule includes a charge for physical damage waiver, Lessor agrees that (A) Lessee will not be required to obtain or maintain the minimum physical damage insurance (collision and comprehensive) required under Section 11(a) for the Vehicle(s) covered by such Schedule and (B) Lessor will assume the risk of physical damage (collision and comprehensive) to the Vehicle(s) covered by such Schedule; provided, however, that such physical damage waiver shall not apply to, and Lessee shall be and remain liable and responsible for, damage to a covered Vehicle caused by wear and tear or mechanical breakdown or failure, damage to or loss of any parts, accessories or components added to a covered Vehicle by Lessee without the prior written consent of Lessor and/or damage to or loss of any property and/or personal effects contained in a covered Vehicle. In the event of a Casualty Occurrence to a covered Vehicle, Lessor may, at its option, replace, rather than repair, the damaged Vehicle with an equivalent vehicle, which replacement vehicle will then constitute the "Vehicle" for purposes of this Agreement; and (ii) if Section 4 of a Schedule includes a charge for commercial automobile liability enrollment, Lessor agrees that it will, at its expense, obtain for and on behalf of Lessee, by adding Lessee as an additional insured under a commercial automobile liability insurance policy issued by an insurance company selected by Lessor, commercial automobile liability insurance satisfying the minimum commercial automobile liability insurance required under Section 11(a) for the Vehicle(s) covered by such Schedule. Lessor may at any time during the applicable Term terminate said obligation to provide physical damage waiver and/or commercial automobile liability enrollment and cancel such physical damage waiver and/or commercial automobile liability enrollment upon giving Lessee at least ten (10) days prior written notice. Upon such cancellation, insurance in the minimum amounts as set forth in 11(a) shall be obtained and maintained by Lessee at Lessee's expense. An adjustment will be made in monthly rental charges payable by Lessee to reflect any such change and Lessee agrees to furnish Lessor with satisfactory proof of insurance coverage within ten (10) days after mailing of the notice. In addition, Lessor may change the rates charged by Lessor under this Section 11(b) for physical damage waiver and/or commercial automobile liability enrollment upon giving Lessee at least thirty (30) days prior written notice.

12. **INDEMNITY:** Lessee agrees to defend and indemnify Lessor, Servicer, any other agent of Lessor and their respective successors and assigns from and against any and all losses, damages, liabilities, suits, claims, demands, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) which Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns may incur by reason of Lessee's breach or violation of, or failure to observe or perform, any term, provision or covenant of this Agreement, or as a result of any loss, damage, theft or destruction of any Vehicle or related to or arising out of or in connection with the use, operation or condition of any Vehicle. The provisions of this Section 12 shall survive any expiration or termination of this Agreement.

13. **INSPECTION OF VEHICLES; ODOMETER DISCLOSURE; FINANCIAL STATEMENTS:** Lessee agrees to accomplish, at its expense, all inspections of the Vehicles required by any governmental authority during the Term. Lessor, Servicer, any other agent of Lessor and any of their respective successors or assigns will have the right to inspect any Vehicle at any reasonable time(s) during the Term and for this purpose to enter into or upon any building or place where any Vehicle is located. Lessee agrees to comply with all odometer disclosure laws, rules and regulations and to provide such written and signed disclosure information on such forms and in such manner as directed by Lessor. Providing false information or failure to complete the odometer disclosure form as required by law may result in fines and/or imprisonment. Lessee hereby agrees to promptly deliver to Lessor such financial statements and other financial information regarding Lessee as Lessor may from time to time reasonably request.

14. **DEFAULT; REMEDIES:** The following shall constitute events of default ("Events of Default") by Lessee under this Agreement: (a) if Lessee fails to pay when due any rent or other amount due under this Agreement and any such failure shall remain unremedied for ten (10) days; (b) if Lessee fails to perform, keep or observe any term, provision or covenant contained in Section 11 of this Agreement; (c) if Lessee fails to perform, keep or observe any other term, provision or covenant contained in this Agreement and any such failure shall remain unremedied for thirty (30) days after written notice thereof is given by Lessor, Servicer or any other agent of Lessor to Lessee; (d) any seizure or confiscation of any Vehicle or any other act (other than a Casualty Occurrence) otherwise rendering any Vehicle unsuitable for use (as determined by Lessor); (e) if any present or future guaranty in favor of Lessor of all or any portion of the obligations of Lessee under this Agreement shall at any time for any reason cease to be in full force and effect or shall be declared to be null and void by a court of competent jurisdiction, or if the validity or enforceability of any such guaranty shall be contested or denied by any guarantor, or if any guarantor shall deny that it, he or she has any further liability or obligation under any such guaranty or if any guarantor shall fail to comply with or observe any of the terms, provisions or conditions contained in any such guaranty; (f) the occurrence of a material adverse change in the financial condition or business of Lessee or any guarantor; or (g) if Lessee or any guarantor is in default under or fails to comply with any other present or future agreement with or in favor of Lessor, The Crawford Group, Inc. or any direct or indirect subsidiary of The Crawford Group, Inc.. For purposes of this Section 14, the term "guarantor" shall mean any present or future guarantor of all or any portion of the obligations of Lessee under this Agreement.

Upon the occurrence of any Event of Default, Lessor, without notice to Lessee, will have the right to exercise concurrently or separately (and without any election of remedies being deemed made), the following remedies: (a) Lessor may demand and receive immediate possession of any or all of the Vehicles from Lessee, without releasing Lessee from its obligations under this Agreement; if Lessee fails to surrender possession of the Vehicles to Lessor on default (or termination or expiration of the Term), Lessor, Servicer, any other agent of Lessor and any of Lessor's independent contractors shall have the right to enter upon any premises where the Vehicles may be located and to remove and repossess the Vehicles; (b) Lessor may enforce performance by Lessee of its obligations under this Agreement; (c) Lessor may recover damages and expenses sustained by Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns by reason of Lessee's default including, to the extent permitted by applicable law, all costs and expenses, including court costs and reasonable attorneys' fees and expenses, incurred by Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns in attempting or effecting enforcement of Lessor's rights under this Agreement (whether or not litigation is commenced) and/or in connection with bankruptcy or insolvency proceedings; (d) upon written notice to Lessee, Lessor may terminate Lessee's rights under this Agreement; (e) with respect to each Vehicle, Lessor may recover from Lessee all amounts owed by Lessee under Sections 3(b) and 3(c) of this Agreement (and, if Lessor does not recover possession of a Vehicle, (i) the estimated wholesale value of such Vehicle for purposes of Section 3(c)

Initials: EFM____   Cust NH    Page 3

shall be deemed to be $0.00 and (ii) the calculations described in the first two sentences of Section 3(c) shall be made without giving effect to clause (ii) in each such sentence); and/or (f) Lessor may exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code, any other applicable law or in equity. A termination of this Agreement shall occur only upon written notice by Lessor to Lessee. Any termination shall not affect Lessee's obligation to pay all amounts due for periods prior to the effective date of such termination or Lessee's obligation to pay any indemnities under this Agreement. All remedies of Lessor under this Agreement or at law or in equity are cumulative.

15. **ASSIGNMENTS:** Lessor may from time to time assign, pledge or transfer this Agreement and/or any or all of its rights and obligations under this Agreement to any person or entity. Lessee agrees, upon notice of any such assignment, pledge or transfer of any amounts due or to become due to Lessor under this Agreement to pay all such amounts to such assignee, pledgee or transferee. Any such assignee, pledgee or transferee of any rights or obligations of Lessor under this Agreement will have all of the rights and obligations that have been assigned to it. Lessee's rights and interest in and to the Vehicles are and will continue at all times to be subject and subordinate in all respects to any assignment, pledge or transfer now or hereafter executed by Lessor with or in favor of any such assignee, pledgee or transferee, provided that Lessee shall have the right of quiet enjoyment of the Vehicles so long as no Event of Default under this Agreement has occurred and is continuing. Lessee acknowledges and agrees that the rights of any assignee, pledgee or transferee in and to any amounts payable by the Lessee under any provisions of this Agreement shall be absolute and unconditional and shall not be subject to any abatement whatsoever, or to any defense, setoff, counterclaim or recoupment whatsoever, whether by reason of any damage to or loss or destruction of any Vehicle or by reason of any defect in or failure of title of the Lessor or interruption from whatsoever cause in the use, operation or possession of any Vehicle, or by reason of any indebtedness or liability howsoever and whenever arising of the Lessor or any of its affiliates to the Lessee or to any other person or entity, or for any other reason.

Without the prior written consent of Lessor, Lessee may not assign, sublease, transfer or pledge this Agreement, any Vehicle, or any interest in this Agreement or in and to any Vehicle, or permit its rights under this Agreement or any Vehicle to be subject to any lien, charge or encumbrance. Lessee's interest in this Agreement is not assignable and cannot be assigned or transferred by operation of law. Lessee will not transfer or relinquish possession of any Vehicle (except for the sole purpose of repair or service of such Vehicle) without the prior written consent of Lessor.

16. **MISCELLANEOUS:** This Agreement contains the entire understanding of the parties. This Agreement may only be amended or modified by an instrument in writing executed by both parties. Lessor shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies under this Agreement and no waiver whatsoever shall be valid unless in writing and signed by Lessor and then only to the extent therein set forth. A waiver by Lessor of any right or remedy under this Agreement on any one occasion shall not be construed as a bar to any right or remedy, which Lessor would otherwise have on any future occasion. If any term or provision of this Agreement or any application of any such term or provision is invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision will not be affected thereby. Giving of all notices under this Agreement will be sufficient if mailed by certified mail to a party at its address set forth below or at such other address as such party may provide in writing from time to time. Any such notice mailed to such address will be effective one (1) day after deposit in the United States mail, duly addressed, with certified mail, postage prepaid. Lessee will promptly notify Lessor of any change in Lessee's address. This Agreement may be executed in multiple counterparts (including facsimile and pdf counterparts), but the counterpart marked "ORIGINAL" by Lessor will be the original lease for purposes of applicable law. All of the representations, warranties, covenants, agreements and obligations of each Lessee under this Agreement (if more than one) are joint and several.

17. **SUCCESSORS AND ASSIGNS; GOVERNING LAW:** Subject to the provisions of Section 15, this Agreement will be binding upon Lessee and its heirs, executors, personal representatives, successors and assigns, and will inure to the benefit of Lessor, Servicer, any other agent of Lessor and their respective successors and assigns. This Agreement will be governed by and construed in accordance with the substantive laws of the State of Missouri (determined without reference to conflict of law principles).

18. **NON-PETITION:** Each party hereto hereby covenants and agrees that, prior to the date which is one year and one day after payment in full of all indebtedness of Lessor, it shall not institute against, or join any other person in instituting against, Lessor any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings or other similar proceeding under the laws of the United States or any state of the United States. The provisions of this Section 18 shall survive termination of this Master Equity Lease Agreement.

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Master Equity Lease Agreement as of the day and year first above written.

| LESSEE: Borrego Solar Systems, Inc. | LESSOR: Enterprise FM Trust |
|---|---|
|  | By: Enterprise Fleet Management, Inc., its attorney in fact |
| By: *[signature]* | By: *[signature]* Sinus Karimi / Chris Service |
| Title: Michael Hall, CEO | Title: Director / Controller |
| Address: 5005 Texas Street, Suite 400, San Diego, CA 92108 | Address: 29 Hunter, St. Louis, MO 63124 |
| Date Signed: November 14, 2014 | Date Signed: 11/20/14 |

Initials: EFM _____ Cus MH

Page 4

485988
13

## MAINTENANCE AGREEMENT

This Maintenance Agreement (this "Agreement") is made and entered into this eleventh day of November, 2014, by Enterprise Fleet Management, Inc., a Missouri corporation ("EFM"), and Borrego Solar Systems, Inc. ("Lessee").

### WITNESSETH

1. **LEASE.** Reference is hereby made to that certain Master Equity Lease Agreement dated as of the eleventh day of November, 2014, by and between Enterprise FM Trust, a Delaware statutory trust, as lessor ("Lessor"), and Lessee, as lessee (as the same may from time to time be amended, modified, extended, renewed, supplemented or restated, the "Lease"). All capitalized terms used and not otherwise defined in this Agreement shall have the respective meanings ascribed to them in the Lease.

2. **COVERED VEHICLES.** This Agreement shall only apply to those vehicles leased by Lessor to Lessee pursuant to the Lease to the extent Section 4 of the Schedule for such vehicle includes a charge for maintenance (the "Covered Vehicle(s)").

3. **TERM AND TERMINATION.** The term of this Agreement ("Term") for each Covered Vehicle shall begin on the Delivery Date of such Covered Vehicle and shall continue until the last day of the "Term" (as defined in the Lease) for such Covered Vehicle unless earlier terminated as set forth below. Each of EFM and Lessee shall each have the right to terminate this Agreement effective as of the last day of any calendar month with respect to any or all of the Covered Vehicles upon not less than sixty (60) days prior written notice to the other party. The termination of this Agreement with respect to any or all of the Covered Vehicles shall not affect any rights or obligations under this Agreement which shall have previously accrued or shall thereafter arise with respect to any occurrence prior to termination, and such rights and obligations shall continue to be governed by the terms of this Agreement.

4. **VEHICLE REPAIRS AND SERVICE.** EFM agrees that, during the Term for the applicable Covered Vehicle and subject to the terms and conditions of this Agreement, it will pay for, or reimburse Lessee for its payment of, all costs and expenses incurred in connection with the maintenance or repair of a Covered Vehicle. This Agreement does not cover, and Lessee will remain responsible for and pay for, (a) fuel, (b) oil and other fluids between changes, (c) tire repair and replacement, (d) washing, (e) repair of damage due to lack of maintenance by Lessee between scheduled services (including, without limitation, failure to maintain fluid levels), (f) maintenance or repair of any alterations to a Covered Vehicle or of any after-market components (this Agreement covers maintenance and repair only of the Covered Vehicles themselves and any factory-installed components and does not cover maintenance or repair of chassis alterations, add-on bodies (including, without limitation, step vans) or other equipment (including, without limitation, lift gates and PTO controls) which is installed or modified by a dealer, body shop, upfitter or anyone else other than the manufacturer of the Covered Vehicle, (g) any service and/or damage resulting from, related to or arising out of an accident, a collision, theft, fire, freezing, vandalism, riot, explosion, other Acts of God, an object striking the Covered Vehicle, improper use of the Covered Vehicle (including, without limitation, driving over curbs, overloading, racing or other competition) or Lessee's failure to maintain the Covered Vehicle as required by the Lease, (h) roadside assistance or towing for vehicle maintenance purposes, (i) mobile services, (j) the cost of loaner or rental vehicles or (k) if the Covered Vehicle is a truck, (i) manual transmission clutch adjustment or replacement, (ii) brake adjustment or replacement or (iii) front axle alignment. Whenever it is necessary to have a Covered Vehicle serviced, Lessee agrees to have the necessary work performed by an authorized dealer of such Covered Vehicle or by a service facility acceptable to EFM. In every case, if the cost of such service will exceed $50.00, Lessee must notify EFM and obtain EFM's authorization for such service and EFM's instructions as to where such service shall be made and the extent of service to be obtained. Lessee agrees to furnish an invoice for all service to a Covered Vehicle, accompanied by a copy of the shop or service order (odometer mileage must be shown on each shop or service order). EFM will not be obligated to pay for any unauthorized charges or those exceeding $50.00 for one service on any Covered Vehicle unless Lessee has complied with the above terms and conditions. EFM will not have any responsibility to pay for any services in excess of the services recommended by the manufacturer, unless otherwise agreed to by EFM. Notwithstanding any other provision of this Agreement to the contrary, (a) all service performed within one hundred twenty (120) days prior to the last day of the scheduled "Term" (as defined in the Lease) for the applicable Covered Vehicle must be authorized by and have the prior consent and approval of EFM and any service not so authorized will be the responsibility of and be paid for by Lessee and (b) EFM is not required to provide or pay for any service to any Covered Vehicle after 100,000 miles.

5. **ENTERPRISE CARDS:** EFM may, at its option, provide Lessee with an authorization card (the "EFM Card") for use in authorizing the payment of charges incurred in connection with the maintenance of the Covered Vehicles. Lessee agrees to be liable to EFM for, and upon receipt of a monthly or other statement from EFM, Lessee agrees to promptly pay to EFM, all charges made by or for the account of Lessee with the EFM Card (other than any charges which are the responsibility of EFM under the terms of this Agreement). EFM reserves the right to change the terms and conditions for the use of the EFM Card at any time. The EFM Card remains the property of EFM and EFM may revoke Lessee's right to possess or use the EFM Card at any time. Upon the termination of this Agreement or upon the demand of EFM, Lessee must return the EFM Card to EFM. The EFM Card is non-transferable.

6. **PAYMENT TERMS.** The amount of the monthly maintenance fee will be listed on the applicable Schedule and will be due and payable in advance on the first day of each month. If the first day of the Term for a Covered Vehicle is other than the first day of a calendar month, Lessee will pay EFM, on the first day of the Term for such Covered Vehicle, a pro-rated maintenance fee for the number of days that the Delivery Date precedes the first monthly maintenance fee payment date. Any monthly maintenance fee or other amount owed by Lessee to EFM under this Agreement which is not paid within twenty (20) days after its due date will accrue interest, payable upon demand of EFM, from the date due until paid in full at a rate per annum equal to the lesser of (i) Eighteen Percent (18%) per annum or (ii) the highest rate allowed by applicable law. The monthly maintenance fee set forth on each applicable Schedule allows the number of miles per month as set forth in such Schedule. Lessee agrees to pay EFM at the end of the applicable Term (whether by reason of termination of this Agreement or otherwise) an overmileage maintenance fee for any miles in excess of this average amount per month at the rate set forth in the applicable Schedule. EFM may, at its option, permit Lessor, as an agent for EFM, to bill and collect amounts due to EFM under this Agreement from Lessee on behalf of EFM.

7. **NO WARRANTIES.** Lessee acknowledges that EFM does not perform maintenance or repair services on the Covered Vehicles but rather EFM arranges for maintenance and/or repair services on the Covered Vehicles to be performed by third parties. EFM MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY PRODUCTS, REPAIRS OR SERVICES PROVIDED FOR UNDER THIS AGREEMENT BY THIRD PARTIES, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, COMPLIANCE WITH SPECIFICATIONS, OPERATION, CONDITION, SUITABILITY, PERFORMANCE OR QUALITY. ANY DEFECT IN THE PERFORMANCE OF ANY PRODUCT, REPAIR OR SERVICE WILL NOT RELIEVE LESSEE OF ITS OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING THE PAYMENT TO EFM OF THE MONTHLY MAINTENANCE FEES AND OTHER CHARGES DUE UNDER THIS AGREEMENT.

Initials. EFM_____  Cust _MH_    Page 1

8. **LESSOR NOT A PARTY.** Lessor is not a party to, and shall have no rights, obligations or duties under or in respect of, this Agreement.

9. **NOTICES.** Any notice or other communication under this Agreement shall be in writing and delivered in person or sent by facsimile, recognized overnight courier or registered or certified mail, return receipt requested and postage prepaid, to the applicable party at its address or facsimile number set forth on the signature page of this Agreement, or at such other address or facsimile number as any party hereto may designate as its address or facsimile number for communications under this Agreement by notice so given. Such notices shall be deemed effective on the day on which delivered or sent if delivered in person or sent by facsimile, on the first (1st) business day after the day on which sent, if sent by recognized overnight courier or on the third (3rd) business day after the day on which mailed, if sent by registered or certified mail.

10. **MISCELLANEOUS.** This Agreement embodies the entire Agreement between the parties relating to the subject matter hereof. This Agreement may be amended only by an agreement in writing signed by EFM and Lessee. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provisions in any other jurisdiction. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that Lessee may not assign, transfer or delegate any of its rights or obligations under this Agreement without the prior written consent of EFM. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Missouri (without reference to conflict of law principles).

IN WITNESS WHEREOF, EFM and Lessee have executed this Maintenance Agreement as of the day and year first above written.

| LESSEE: Borrego Solar Systems, Inc. | EFM: Enterprise Fleet Management, Inc. |
|---|---|
| By: *Michael Hall* (signature) | By: ~~Sirus Karimi~~ *Chris Stevens* (signature) |
| Title: CEO | Title: ~~Director~~ Conference |
| Address: 5005 Texas Street, Suite 400, San Diego, CA 92108 | Address: 29 Hunter, St. Louis, MO 63124 |
| Attention: Accounting | Attention: |
| Facsimile No.: 888/ 843 - 6778 | Facsimile No.: |
| Date Signed: November 14, 2014 | Date Signed: 11/20/14 |

Initials: EFM _____ Cust MH

Page 2