UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNA V. KASHPER, individually, and as mother and next friend of Three Minors and as personal representative of the ESTATE OF KONSTANTIN M. KASHPER, <br><br> Plaintiff, <br><br> VS. <br><br> TOYOTA MOTOR SALES, U.S.A., INC.; TOYOTA MOTOR CORPORATION; ENTERPRISE FM TRUST; ENTERPRISE FLEET MANAGEMENT; JOHN DOE 1; JOHN DOE 2 and JOHN DOE 3, <br><br> Defendants. | C.A. No. 1:17-cv-12462-WGY |

## PLAINTIFF KASHPER'S OPPOSITION TO DEFENDANT MOTOR SALES ,U.S.A.INC'S MOTION TO STRIKE CERTAIN EXHIBITS TO THE PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

A number of the objections to evidence relate to GSP and EDR. Toyota basically claims that EDR data is infallible and wants excluded anything to the contrary. In this case the GSP data and the EDR data are very different with respect to some very relevant things. It should be a jury issue as which data should be accepted.

The physical evidence is in some important respects either inconsistent with the EDR or contrary. for example , the GSP has Konstantin Kashper braking and the EDR does not. Police testimony is the wet road could explain the lack of markings and that the marks on the grass

surface are consistent with braking marks but could be something else too. A better and perhaps more relevant example regards the front airbag, he EDR says front airbag did not deploy, the officer at the scene who was in charge testified that the front airbag did deploy and he saw the deflated airbag.

**1, GSP-exhibit 3**

1. GSP--Attached hereto is the affidavit of Anna Kashper, the text of which is :

Affidavit of Anna Kashper

> "1. My name is Anna Kashper. I understand there is some question regarding the GPS data in the case of Kashper v. Toyota.
>
> 2. Within a day or so of Konstantin Kashper's death I logged onto the system that Borrego was using and screen shot the data they had on there. Those screen shots I later gave to my attorney and I understand were then provided to Toyota during discovery.
>
> 3 I still have in my possession the phone."

United States of America v. Robin T. Brooks, Jr., 715 F.3d 1069 (8th cir.,2013) is probably the main appellate decision.

As for the admissibility of GSP Brooks case at 1078 upheld taking judicial notice of the reliability and accuracy of the GPS devices:

> "We cannot conclude that the district court abused its discretion in taking judicial notice of the accuracy and reliability of GPS technology. Commercial GPS units are widely available, and most modern cell phones have GPS tracking capabilities. Courts routinely rely on GPS technology to supervise individuals on probation or supervised release, and, in assessing the Fourth Amendment constraints associated with GPS tracking, courts generally have assumed the technology's accuracy. See, *e.g.*, *United States v. Jones*, 565 U.S. ------ ,    132 S.Ct. 945. 963, 181 l .Ed.2d 91L (2012). (Alito, J., concurring)."

At 1082 that an expert is not necessary: "In contrast, the GPS tracking reports here were merely computer printouts of information generated by accepted technology. There was no human analysis, and as explained above, they did not require expert testimony for their introduction,"

At 1079 not hearsay.

In accord with Brooks is a recent Massachusetts Superior Court case that cites an earlier SJC decision. That case is:

Commonwealth V. Mannix Lewis, Plymouth Superior Court, Docket 1483cr00556, Dated October 23, 2018, quote from

> 'It is the Court's conclusion that the reliability of GPS technology is today so broadly accepted in the scientific and legal community that no Daubert/Lanigan hearing is necessary to establish the admissibility of its position data in this case. In Commonwealth v. Thissell, 457 Mass. 191 (2010), the Supreme Judicial Court considered whether GPS-based records of a defendant's movements were sufficiently reliable to serve as the basis for a probation revocation. The records at issue were activity reports showing the defendant's time-specified location within particular exclusion zones, and were introduced at hearing through a probation officer who was not an "expert" in GPS technology. Id. at 193-95. The probation officer simply testified that the GPS apparatus transmits a signal to a satellite, and that a central monitoring center is on this basis able to pinpoint a probationer's location. Id. at 193. Addressing a due process challenge to the admissibility of the records, the SJC declared: "To the extent they rely on GPS technology, that technology is widely used and acknowledged as a reliable indicator of time and location data."

The First Circuit Court of Appeals has similarly held that expert testimony is not required to validate GPS evidence. In United States v. Espinal-Almeida, 699 F.3d 588 (1st Cir. 2012), cert. denied, 569 U.S. 936 (2013):

> "The issues surrounding the processes employed by the GPS and software, and their accuracy, were not so scientifically or technologically grounded that expert testimony was required to authenticate the evidence, and thus the testimony of Durand, someone knowledgeable, trained, and experienced in analyzing GPS devices, was sufficient to authenticate the [sic] GPS data and software generated evidence." Id. at 612-613."

### 2, EDR Exhibits 4-7

**Exhibit 4 as defendant Toyota concedes is self-authenticating.  There is no hearsay in the quotes from Toyota such as :** Toyota expressed doubts about its ability to accurately read the data from the recorders. The tool for reading the data has not been "scientifically validated," the company has said. "At this time, Toyota does not have confidence that the readout reports it generates are accurate," it added.

Exhibit 5 is self-authenticating as a document by or from defendant. Toyota does not dispute that and does not deny its accuracy. Most important, Toyota does not deny the truth of any of these exhibits, and any quotes or whatever from Toyota. Toyota expert Van Arsdell made comment at his deposition as to the probable dates with the apparent intention of alleging even if that situation was so ten years ago, it is not so now. Of interest therefore is recent testimony under oath of Toyota representatives as reported in case decisions. One such case is

_____            Appellant, V. Mary Berghuis, Warden, Respondent-Appellee.

No. 16-2336, United States Court Of Appeals For The Sixth Circuit, July 24, 2017

This decision gives details of the testimony of Mark Jakstis, a Design and Technical Analysis       Manager at Toyota Motor Sales, U.S.A. A relevant excerpt (page 3):

> " system in defendant's Lexus a "prototype tool," and that
> the specific device was used only in Toyota vehicles. He conceded
> that Toyota designed the EDR "to look at the performance of an
> airbag system in a crash"

Thus, the EDR system is not a finished product and it was designed with reference to airbags and not for example braking. The sixth circuit (page 4) found non -constitutional error in that In so ruling, the court explained that before trial the trial court " did not understand the nature of Bojaj's *Daubert* request but that the EDR's reliability was seriously questioned at trial—the read-out tool used to extract information from the EDR is a prototype, Toyota warns that EDR data is not reliable unless independently corroborated, and the EDR was developed to provide airbag statistics, not for accident reconstruction. The court also noted: "This certainly isn't some harmless error, as well. . . . It's not curable.""

Exhibit 7 Is a government publication and admissible as such,

**THREE AFFIDAVITS:**

The three signed affidavits were omitted by mistake and a motion made and allowed for the affidavits. Thus signed affidavits are now in the case.

Kashper plaintiffs by their attorney,

Marc S Alpert, BBO#016420
Marc S Alpert, P.C.
15 Court Square, #940
Boston, MA 02108-2524
Tel: 617 227-2380, Fax: 866-393-2857, e-mail: trepla2380@juno.com, marcalpert2015@gmail.com

Certificate of service: I certify that in addition to the automatic service on all those who have filed an appearance, a copy of this is being e-mailed to David M. Rogers.

*[signature]*

**Affidavit of Leon Bouriev**

My name is Leon Bouriev. Konstantin Kashper and I were friends since about 1995 until his death in January 2017. We have been good friends since high school. From about 1995 to sometime in January 2017, I have been on average at least once a week in a moving motor vehicle in which Konstantin was either the driver or a passenger. The last time was about the week before Konstantin Kashper's death when we went together to a car show. Konstantin Kashper always, absolutely always, wore a seatbelt. His wife's Anna's description of Konstantin Kashper being a fanatic about wearing seatbelts is correct.

Signed under the pains and penalties of perjury this           day of January 2019.

Steve Gilkberg

Steve Gilkberg. Konstantin Kashper and I were best friends in high school and [illegible]. I have been countless times in a moving vehicle in which Konstantin [was] the driver or a passenger. The last time we were in a motor vehicle together [was ——] before Konstantin's death. Konstantin Kashper always, absolutely [wore a seatbelt].

[Signed under] the pains and penalties of perjury this day 6/h of January 2019.

_[signature]_

SCANNER
ODYSSEY / ITS



...Olena Kashpar is my sister. Konstantin Kashpar was my brother-in-law... every time in which Konstantin Kashpar was either a passenger... Kashpar and I were in a motor vehicle together was about a... that Konstantin Kashpar always, absolutely always, wore a...

...before me 1st day of January 2019.